**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:** Paycheck Protection Program ("PPP") Agent Fees Litigation | MDL Docket No. _____ |

**MEMORANDUM IN SUPPORT OF**
**ALLIANT CPA GROUP LLC'S MOTION FOR TRANSFER OF ACTIONS TO THE**
**NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. §1407 FOR A**
**COORDINATED AND/OR CONSOLIDATED PROCEEDING**

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................... 1

II.    BACKGROUND .......................................................................................................... 2

III.   ARGUMENT ............................................................................................................... 5

     A.     THE RELATED ACTIONS SATISFY THE REQUIREMENTS FOR CONSOLIDATION AND TRANSFER UNDER SECTION § 1407. ........................................................................ 6

          1.    The Related Actions Present Common Questions of Fact. ..................................... 7

          2.    The Convenience of Parties and Witnesses is Facilitated by Transfer, Consolidation, and/or Coordination. ..................................................................... 9

          3.    Transfer, Consolidation, and Coordination Will Promote the Just and Efficient Conduct of These Related Actions. .................................................................... 11

     B.     THE NORTHERN DISTRICT OF GEORGIA BEFORE THE HONORABLE LEIGH MARTIN MAY IS THE APPROPRIATE TRANSFEREE FORUM FOR THIS CASE. ........................ 13

          1.    The Northern District of Georgia is Convenient, Economical, and Safe.............. 13

          2.    The Northern District of Georgia's Banking and Financial Industry Gives it a Sufficiently Strong Connection to This Litigation................................................ 15

          3.    The Northern District of Georgia has Extensive Experience With MDL Litigation, has Ample Resources, and has a Low Current Case Load. ................................... 16

          4.    Judge May Is Well-Qualified to Efficiently and Effectively Handle This MDL.  18

     C.     IN THE ALTERNATIVE, THE DISTRICT COURT OF ARIZONA BEFORE JUDGE HUMETEWA IS AN APPROPRIATE TRANSFEREE FORUM FOR THIS CASE............... 19

          1.    The District of Arizona is Convenient and Economical. ...................................... 19

          2.    Many of the Defendants Have Connections to the District of Arizona. ............... 20

          3.    Judge Humetewa Would Capably Shepherd This MDL to its Conclusion. ......... 20

IV.   CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*In re Airline Baggage Fee Antitrust Litigation*, 655 F. Supp. 2d 1362 (J.P.M.L. 2009) .............. 17

*In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991) ............ 7

*In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388 (J.P.M.L. 2014) ............................ 7, 8

*In re Baycol Prod. Liab. Litig.*, 180 F. Supp. 2d 1378 (J.P.M.L. 2001) ....................................... 20

*In re Bristol Bay Alaska, Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504 (J.P.M.L. 1976) ................................................................................................................................................. 13

*In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F. Supp. 2d 1372 (J.P.M.L. 2009) ........................................................................................................................ 12

*In re Delta Dental Antitrust Litigation*, 2020 U.S. Dist. LEXIS 54441 (J.P.M.L. March 27, 2020) .................................................................................................................................................. 12

*In re Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369 (J.P.M.L. 2010) 13

*In re Equifax, Inc.*, 289 F. Supp. 3d 1322 (J.P.M.L. 2019) ......................................................... 17

*In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381 (J.P.M.L. 2017) ................................................................................................. 6

*In re Fisher-Price Rockn Play Sleeper*, 412 F. Supp. 3d 1357 (J.P.M.L. 2019) ......................... 12

*In re Library Editions of Children's Books*, 297 F. Supp. 385 (J.P.M.L. 1968) ......................... 16

*In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365 (J.P.M.L. 2007) .... 20

*In re Nat'l Prescription Opiate Litig.*, 2019 U.S. Dist. LEXIS 129695 (J.P.M.L. 2019) .............. 7

*In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017) ............................. 7

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F. Supp. 2d 1372 (J.P.M.L. 2003) .................................................................................................................................................. 16

*In re North Sea Brent Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384 (J.P.M.L. Oct. 21, 2013) 12

*In re Payment Card Interchange Fee And Merchant*, 398 F. Supp. 2d 1356 (J.P.M.L. 2005) ...... 7

*In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006) ............................ 6

*In re Pilot Flying J Fuel Rebate Contract Litigation (No. II)*, 11 F. Supp. 3d 1351 (J.P.M.L. 2014) ........................................................................................................................................ 11

*In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968) ................................................ 6

*In Re Toyota Motor Corp. Unintended Acceleration* 704 F. Supp. 2d 1379 (J.P.M.L. 2010) 20, 23

*In re Tylenol Mktg., Sales Pracs. and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013) .................................................................................................................................................. 14

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402 (J.P.M.L. 2014) ............. 14

*In re Zostavax Products Liability Litigation*, 330 F. Supp. 3d 1378 (J.P.M.L. 2018) ................. 14

*Royster v. Food Lion (In re Food Lion)*, 73 F.3d 528 (4th Cir. 1996) .......................................... 6

**Statutes**

28 U.S.C. §1407 .................................................................................................... 5, 6, 13

28 U.S.C. §1407(a) ................................................................................................... 6, 7

**Treatises**

*Manual for Complex Litigation* (4th) § 20.131 ........................................................... 14

## I.     INTRODUCTION

Pursuant to 28 U.S.C. §1407 and Rule 6.2(a) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, movant Alliant CPA Group LLC (the "Movant"), the plaintiff in *Alliant CPA Group LLC v. Bank of America Corp., et al.*, C.A., 1:20-cv-02026-LMM (N.D. Ga.) (the "*Alliant* Action"), respectfully moves this honorable Judicial Panel on Multidistrict Litigation for an Order transferring all twelve (12) currently-filed cases in the Schedule of Related Actions filed concurrently herewith (collectively, the "Related Actions"), as well as any subsequent "tag along" cases involving similar facts or claims, to the Northern District of Georgia and before the Honorable Leigh Martin May for coordinated or consolidated proceedings.  Alternatively, the plaintiff requests transfer to the District of Arizona before the Honorable Diane J. Humetewa.

In March of 2020, the Federal Government created the Paycheck Protection Program ("PPP") under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").  The purpose of the PPP is to provide qualified small and mid-size business borrowers with loans to weather the extreme economic hardships created by the COVID-19 crisis.  In designing the PPP, the Federal Government specifically incentivized and encouraged agents to engage in the PPP loan process ("PPP Agents") to effectively and efficiently connect small and medium-sized businesses to the defendant lenders and banks ("PPP Lenders"), who were the gate-keepers for the first come, first serve program.  In fact, without the assistance of the PPP Agents, many mom-and-pop business owners skilled at running their businesses, but not in navigating a complicated federal loan program, would have been shut out of the PPP loan program.

As described below, Federal law mandates that PPP Agents be paid out of the PPP Lenders' origination fees paid to them by the Federal Government, but in many cases, these lenders have refused to pay.  Presently, there are at least twelve (12) substantially similar federal actions pending that were filed PPP Agents that helped businesses seek SBA loans from the defendant PPP Lenders

1

but who were not paid.  In total, there are eighty-three (83) defendant Lenders identified in the twelve (12) different actions filed by sixteen (16) different law firms.  These cases are currently pending in ten (10) different federal district courts, and they allege essentially the same wrongful conduct on the part of the named defendants as PPP Lenders.  Specifically, the PPP Agent plaintiffs claim that the PPP Lender defendants have wrongly withheld and converted mandatory fees (the "Agent Fees") paid to them by the U.S. Government and owed to the plaintiffs as PPP Agents as required for helping small businesses secure PPP loans.  All Related Actions involve common questions of law and fact that arise from the defendants' failure to pay these statutorily-mandated Agent Fees they are required to pay pursuant to the "PPP Information Sheet, Lenders" issued by the Treasury[1] and the SBA PPP Interim Final Rule[2] (collectively, the "SBA Regulations").

## II.    BACKGROUND

On March 27, 2020, in response to the economic damage caused by the COVID-19 crisis, the CARES Act was signed into federal law.  *See* H.R. 748.  As part of the CARES Act, the $349 billion PPP loan program was established.  *Id.*  In late April 2020, the Government added an additional $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.  *See* H.R. 266.  The PPP was created as a Main Street loan program to provide American small and medium-sized businesses with two and a half months of financial assistance, with some or all of those loans being forgivable if utilized for the defined purposes.[3]

---

[1] *See* U.S. Department of Treasury, "Paycheck Protection Program (PPP) Information Sheet, Lenders," available at https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf  (last accessed May 19, 2020).

[2] 13 CFR Part 120, available at https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf (last accessed May 19, 2020).

[3] *See* U.S. Department of Treasury, "Paycheck Protection Program (PPP) Information Sheet, Borrowers," available at https://home.treasury.gov/system/files/136/PPP%20Borrower%20Information%20Fact%20Sheet.pdf (last accessed May 19, 2020).

The SBA Regulations provide that PPP Lenders will be compensated for originating PPP loans in the form of fees equaling: 5% of loans not exceeding $350k; 3% of loans over $350k and under $2M; and 1% of loans $2M and above (the "Lender Fees"). *See, supra,* fn. 2. The regulations not only include compensation for PPP Lenders, but also for PPP Agents. "An 'Agent' is defined as an authorized representative and can be: (1) an attorney; (2) an accountant; (3) a consultant; (4) someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant; (5) someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans; (6) a loan broker; or (7) any other individual or entity representing an applicant by conducting business with the SBA." *See, supra,* fn. 1.

Under the SBA Regulations, all Agent Fees must be paid out of the Lender Fees paid to the Lenders by the Federal Government. PPP Agents, such as the plaintiffs, are explicitly prohibited from collecting any fees from applicants or from loan proceeds. *Id.* The SBA Regulations provide that the PPP Agents will be compensated by the PPP Lender from the total fees they receive from the Federal Government on the following schedule: 1% of loans not exceeding $350k; .5% of loans over $350k but under $2M; and .25% of loans $2M and above (the "Agent Fees"). *Id.* As of May 19, 2020, the SBA has approved over 1.6 million PPP loans for small businesses through almost 5,000 lenders.[4] The Lender Fees that the Lenders have been paid by the Federal Government to date is approximately $20 billion, a substantial portion of which is owed by the PPP Lenders to the plaintiffs as PPP Agents. All Related Actions allege that the plaintiffs: served as the PPP Agent for small businesses; applied for PPP loans on behalf of those

---

[4] *See* SBA "Paycheck Protection Program (PPP) Report," available at https://www.sba.gov/sites/default/files/2020-04/PPP%20Deck%20copy.pdf (last accessed May 19, 2020).

businesses with defendants; the PPP loans for their clients were approved by the PPP Lenders; and the PPP Agent did not receive Agent Fees from those Lenders.

Each of the Related Actions involve a single loan product (PPP) that was created under a single congressional act (the CARES Act), administered by a single government agency (the SBA), and that is governed by a single set of regulations (the SBA Regulations).  Currently, there are twelve (12) substantially similar federal actions in ten (10) different federal courts alleging similar wrongful conduct on the part of the defendants prosecuted by a set of cooperating and coordinating law firms.  The Related Actions are pending in the following Districts: the Northern District of Georgia, the District of Arizona, the Northern District of Alabama, the Central District of California, the District of Colorado, the District of Utah, the Northern District of Florida, the Northern District of Illinois, the Southern District of Ohio, and the Western District of Pennsylvania.  To date, a total of thirteen (13) plaintiffs[5] have instituted legal action against eighty-three (83) PPP Lender defendants,[6] including several of the nation's largest banks such as Bank of

---

[5]     The plaintiffs in the Schedule of Actions are: A.D. Sims LLC, Alliant CPA Group, LLC, American Video Duplicating, Inc., Brunner Accounting Group, David S. Lowry, CPA, HallockShannon, PC, ImpAcct, LLC, Kenneth M. Hahn, Leigh, King, Norton & Underwood, LLC, Panda Group, PC, Panda Accounting, LLC, Sport & Wheat CPA, and Tush Law.

[6]     The PPP Lender defendants in the Schedule of Actions are: Academy Bank, N.A., Ameris Bank, Bank of America Co., Bank of America, N.A., Bank of Oklahoma, N.A., Bank OZK,  BOK Financial Corp., BSD Capital, LLC dba Lendistry, Cadence Bancorporation, Cadence Bank, N.A., Celtic Bank Corporation, Celtic Investment, Inc., CenterState Bank Corporation, CenterState Bank, N.A., Chase Bank USA, N.A., Citibank, NA, Citigroup Inc., Citizens & Northern Bank, Citizens & Northern Corp, City National Bank, Colorado Enterprise Fund, CRB Group Inc., , Cross River Bank, Inc., F.N.B. Corp, Fifth Third Bancorp, Fifth Third Bank, First Financial Bancorp, First Financial Bank, First National Bank of Pennsylvania, First National Community Bank, FNCB Bancorp, Inc., Harvest Small Business Finance, Honat Bancorp, Honesdale National Bank, Huntington Bancshares, Inc., JPMorgan Chase & Co., JPMorgan Chase Bank, NA, Kabbage, Inc., KeyBank NA, KeyCorp, Live Oak Bancshares Inc., Live Oak Banking Company, Midfirst Bank, Midwest Regional Bancorp, Inc., Midwest Regional Bank, Modern Bank Management, LLC, Modern Bank, NA, Mountain America Federal Credit Union d/b/a Mountain America Credit Union, MUFG Bank Ltd., MUFG Union Bank, NA, Newtek Small Business Services, Inc., Newton Federal Bank, North Side Bank & Trust Company, PayPal Holdings, Inc.,

America, Wells Fargo, Truist Bank (the combination of the former BB&T and SunTrust banks), JPMorgan Chase, Citigroup, and U.S. Bank.  Some of the defendants are named in up to six of the Related Actions, while others are named in only one.  The defendants are numerous and geographically diverse, located from California to New York, and doing business in every U.S. state and the District of Columbia.

While these cases are geographically disbursed throughout various federal courts, each of the Related Actions asserts similar claims for declaratory judgment, conversion, unjust enrichment, quantum meruit, tortious interference and related common law causes of action.  The Related Actions also seek similar relief, *e.g.*, payment of the Agent Fees, as well as damages including interest, attorneys' fees, and expenses.  The commonality of factual and legal issues, coupled with the need for coordinated adjudication, make the Related Actions particularly suited to being transferred and consolidated in an MDL.  The PPP continues to be administered, so the federal judiciary should respond with a cohesive and efficient methodology for resolution, rather than risking inconsistent pre-trial rulings and duplication of efforts in different federal courts.

## III.   ARGUMENT

Transfer, consolidation, and coordination of the Related Actions by the Panel for pre-trial proceedings under 28 U.S.C. §1407 to the Northern District of Georgia before the Honorable Leigh Martin May, or in the alternative, to the District of Arizona before the Honorable Diane C.

---

Peoples Financial Services Corp., Peoples Security Bank & Trust Co., PNC Bank, NA, Regions Financial Corporation, Regions Bank, Royal Bank of Canada, ServiceFirst Bank, Inc., Synovus Trust Company, NA, Silicon Valley Bank, Small Business Loan Source, Inc., SVB Financial Group, Synovus Bank, The Huntington National Bank, The PNC Financial Services Group, Inc, Truist Bank dba Branch Banking & Trust Co, Truist Financial Corp., U.S. Bancorp, U.S. Bank, NA, United Community Bank,  United Community Bank, Inc., University First Federal Credit Union d/b/a University Federal Credit Union, Vectra Bank Colorado, Wells Fargo & Co., Wells Fargo, NA, Wintrust Bank, NA, Wintrust Financial Corporation, Zions Bancorporation, N.A.

Humetewa, is appropriate. "The multidistrict litigation statute, 28 U.S.C. §1407, was enacted as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different districts." *Royster v. Food Lion (In re Food Lion)*, 73 F.3d 528, 531-32 (4th Cir. 1996). An MDL's purpose is to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, 254 F. Supp. 3d 1381, at 1382 (J.P.M.L. 2017). The statute was also "meant to 'assure uniform and expeditious treatment in the pretrial procedures in multidistrict litigation.'" *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006) (quoting H.R. Rep. No. 1130, 90th Cong., 2d Sess. 1 (1968)). "Without it, 'conflicting pretrial discovery demands for documents and witnesses' might 'disrupt the functions of the Federal courts.'" *Id*. Consolidation is especially important where "the potential for conflicting, disorderly, [and] chaotic" action is greatest. *See also In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968).

### A. THE RELATED ACTIONS SATISFY THE REQUIREMENTS FOR CONSOLIDATION AND TRANSFER UNDER SECTION § 1407.

At the outset, the fact that there are eighty-three (83) defendants named in the Related Actions makes this exactly the type of litigation that should be centralized, consolidated, and coordinated. The Panel has held that combining actions with a large volume of defendants into a single proceeding satisfies the objectives of 28 U.S.C. § 1407(a). *In re Nat'l Prescription Opiate Litig.*, 2019 U.S. Dist. LEXIS 129695 (J.P.M.L. 2019) (consolidating roughly 30 distributor and manufacturer defendants of opioids, based on common questions of fact pertaining to marketing and distribution of opioids) (citing *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378-79 (J.P.M.L. 2017)); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1389 (J.P.M.L. 2014) (consolidating 5 cases from 5 districts that named over 80 defendants

6

collectively); s*ee also In re Payment Card Interchange Fee And Merchant*, 398 F. Supp. 2d 1356 (J.P.M.L. 2005) (consolidating roughly 40 defendants, based on all actions sharing factual questions related to no-surcharge rule and interchange fee); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 416-17 and 424 (J.P.M.L. 1991) (transferring and consolidating 480 defendants).  In such cases, the Panel has found "voluntary coordination impractical."  *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d at 1390.

Transfer and centralization of the Related Actions for consolidated or coordinated pre-trial proceedings in the Northern District of Georgia (or the alternatively proposed venue, the District of Arizona), would satisfy the requirements and goals of 28 U.S.C. § 1407(a).  Under 28 U.S.C. §1407(a), the Panel may transfer and consolidate, or coordinate cases where: (1) the civil actions involve "one or more common questions of fact," (2) transfer will serve "the convenience of the parties and witnesses," and (3) transfer "will promote the just and efficient conduct" of the civil actions.  Each of these factors are met here.

### 1.   The Related Actions Present Common Questions of Fact.

Despite the volume of defendants in the Related Actions, all of the cases involve a single loan product that was created under the CARES Act, that is administered by the SBA, related to the same Agent Fees entitlement, and is governed by a single set of SBA Regulations.  These Related Actions assert overlapping claims against PPP Lenders for failing to pay Agent Fees, based on common factual allegations and legal questions regarding the CARES Act and the SBA Regulations.  Each of the Related Actions is based on the allegation that the PPP Lender defendants failed to remit the Agent Fees owed to plaintiffs despite the SBA Regulations that require payment. There are currently eighty-three (83) separate PPP Lender defendants and thirteen (13) PPP Agent plaintiffs named in the various Related Actions, with the potential for those numbers to increase into the thousands.  *See, supra,* Section II.  Each of the Related Actions is styled as a class action

and purports to bring claims on behalf of other PPP Agents similarly situated.

The core facts at issue here are the same, including the same CARES Act, the same SBA Regulations that apply to all of the PPP Lender defendants, and the same rules mandating the payment of PPP Agent Fees by those defendants out of the Lender Fees they received from the Federal Government. All of the Related Actions allege that the plaintiffs served as the PPP Agent for small and midsize main street businesses who brought these PPP borrowers to each PPP Lender who then applied for PPP loans on behalf of those businesses. Each Action alleges that the defendants served as the PPP Lenders, *i.e.*, the intermediary between small businesses and federal funds. Each also alleges that the defendants received approval from the SBA and funded loans for the plaintiffs' small business clients, that each received their Lender Fee from the Federal Government pursuant to the SBA Regulations, but that the defendants failed to pay the statutorily-mandated Agent Fee to the plaintiffs mandated by those same regulations. The Related Actions contend that plaintiffs believed that they would receive the Agent Fees from the defendants for loans that were approved, as required by the SBA Regulations. All of the Related Actions allege that defendants have either failed to pay at all or failed to pay the full fee owed to plaintiffs, damaging plaintiffs and the PPP Agents nationwide.

Transfer, coordination, and/or consolidation are appropriate because many common questions exist among the Related Actions, including, but not limited to:

- Whether defendants complied with all applicable SBA Regulations in processing applications for PPP funds and in distributing PPP funds, including the PPP Agent Fees;

- Whether defendants complied with their legal obligations under the terms of the CARES Act as a lender of the PPP funds and a custodian for the PPP Agent Fees part of the PPP Lender Fees they received;

- Whether defendants were required to pay the PPP Agent Fees to the plaintiffs and PPP Agents under the CARES Act and SBA Regulations;

- Whether defendants failed to compensate the PPP Agents who facilitated PPP loans by failing and refusing to pay over that portion of the Lender Fees they received earmarked for the PPP Agents;

- Whether defendants have a policy and/or practice of failing to compensate PPP Agents who facilitated PPP loans to the detriment of the PPP Agents;

- Whether defendants prioritized their own origination fees over abiding by the CARES Act, SBA Regulations, and PPP specifications;

- Whether the defendants converted plaintiffs' and Agents' PPP Agent fees;

- Whether the defendants were unjustly enriched by failing to pay the plaintiffs the PPA Agent Fees required by law; and

- Whether defendants are likely to continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act.

In the end, each of the Related Actions involve the same core nucleus of facts and the same legal questions, and they should be transferred and consolidated for this reason. The requirement that the Related Actions present one or more common questions of fact is easily met in this matter.

## 2. The Convenience of Parties and Witnesses is Facilitated by Transfer, Consolidation, and/or Coordination.

Transfer and consolidation or coordination of the Related Actions will indisputably serve the convenience of the parties and witnesses in this matter. With thirteen (13) plaintiffs bringing twelve (12) cases in ten (10) different districts that implicate eighty-three (83) defendants, the size of this litigation easily justifies transfer and consolidation. Moreover, there is a substantial overlap of defendants among the Related Actions—a feature of the litigations that will only become more pronounced as additional cases are filed. For instance, Bank of America is a defendant in six of the Related Actions.[7] Wells Fargo and JPMorgan Chase are each defendants in four of the Related

---

[7]     *See Alliant* Action; *A.D. SIMS, LLC v. Wintrust Financial Corp.,* 1:20-cv-01344 (N.D. Ill.); *IMPACCT, LLC v. JPMorgan Chase & Co.*, 1:20-cv-01344 (D. Colo.); *Panda Group, PC d/b/a Panda Accounting v. Bank of America Corp.*, 4:20-cv-00045 (D. UT.); and *American Video Duplicating, Inc., et al., v. Citigroup, Inc.*, 2:20-cv-03815 (C.D. Cal.); *Brunner Accounting Group v. SVB Financial Group, et al.,* 2:20-cv-04235 (C.D. Cal.).

Actions.[8]  U.S. Bank, City National Bank, BlueVine, Royal Bank of Canada, and Synovus are defendants in two of the Related Actions.[9]  This overlap will only amplify as more cases are filed.

Without transfer and consolidation of these Related Actions, the Parties will likely be subject to duplicative discovery requests, inconsistent court orders relating to pre-trial proceedings, judicial inefficiencies, and unnecessary expense.  Further, different federal courts, in duplicating rulings on the same issues, could make contradictory findings on significant pre-trial disputes.  Litigation of this scope should not be plagued with such inconsistencies and inefficiencies.  Additionally, individual witnesses, such as defendants' employees and executives, could be subject to multiple depositions, interviews, and other pre-trial proceedings.  Transfer and consolidation or coordination of these actions will address these concerns by limiting duplicative discovery and facilitating consistency before a single transferee court.  *See, In re Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [the defendant's] officers and employees and duplicative document discovery regarding the alleged scheme.").

In addition overlapping defendants, there is also an overlap among the putative classes.  All

---

[8]     *See Alliant* Action; *IMPACCT, LLC v. JPMorgan Chase & Co.*, 1:20-cv-01344 (D. Colo.); and *American Video Duplicating, Inc., et al., v. Citigroup, Inc.*, 2:20-cv-03815 (C.D. Cal.); *Brunner Accounting Group v. SVB Financial Group, et al.,* 2:20-cv-04235 (C.D. Cal.); *David S. Lowry, CPA, Ltd., v. U.S. Bancorp., et al.,* 1:20-cv-00348-MWM (N.D. Ohio); *Brunner Accounting Group v. SVB Financial Group, et al.,* 2:20-cv-04235 (C.D. Cal.); and *Panda Accounting LLC v. Academy Bank, N.A., et al.*, 2:20-cv-00985 (D. Ariz.).

[9]     *See Alliant* Action; *IMPACCT, LLC v. JPMorgan Chase*, 1:20-cv-01344 (D. Colo.); *Amer. Video Dupl., Inc. v. Citigroup, Inc.*, 2:20-cv-03815 (C.D. Cal.), and *David S. Lowry, CPA, Ltd., v. U.S. Bancorp., et al.,* 1:20-cv-00348-MWM (N.D. Ohio); *A.D. SIMS, LLC v. Wintrust Financial Corp.,* 1:20-cv-01344 (N.D. Ill.); *Brunner Accounting Group v. SVB Financial Group, et al.,* 2:20-cv-04235 (C.D. Cal.); *Amer. Video Dupl., Inc. v. Royal Bank of Canada, et. al.*, 2:20-cv-04036 (C.D. Cal.); *Sport & Wheat CPA PA v. ServisFirst Bank, et al.*, 3:20-cv-05425 (N.D. Fla.).

but one of the Related Actions seek certification of a nationwide class.[10] *In re Fisher-Price Rockn Play Sleeper*, 412 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019) (centralization will provide superior coordination than could be achieved informally among counsel, in part based on overlapping nationwide classes). Even if that were not true, the Panel has deemed it appropriate to consolidate and coordinate non-overlapping classes as well. *See, e.g., In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F. Supp. 2d 1372 (J.P.M.L. 2009) (centralizing five non-overlapping putative statewide class actions); *In re North Sea Brent Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384, 1385, 2013 WL 5701579, at *1 (J.P.M.L. Oct. 21, 2013).

With regard to the convenience of parties and witnesses, this Panel has recognized that having a presence in or near a district is a factor favoring transfer. *See In re Delta Dental Antitrust Litig.*, 2020 U.S. Dist. LEXIS 54441 (J.P.M.L. March 27, 2020) (finding transferee court appropriate where "[s]everal important defendants are located in or near the [district]."). As explained in detail below (*see, infra,* Section III(B)(2)), Bank of America, Wells Fargo, Synovus, Ameris Bank, Cadence Bank, United Community Bank, and Truist Bank all have corporate offices either in or near Georgia, and Atlanta is geographically central to many of the Lenders that are not otherwise connected to Georgia, making the Northern District of Georgia the most convenient location for this litigation.

### 3. Transfer, Consolidation, and Coordination Will Promote the Just and Efficient Conduct of These Related Actions.

Granting this motion will also serve the just and efficient conduct of the Related Actions, giving structure and a single judicial voice to what otherwise could become a chaotic litigation with eighty-three (83) defendants (and counting) in ten (10) different judicial venues. Unless these

---

[10] *See Sport & Wheat CPA PA v. ServisFirst Bank, Inc.*, 3:20-cv-05425 (N.D. Fla.).

cases are transferred and consolidated, there is substantial risk that litigation of the Related Actions will result in a sprawling litigation that is unjust, inefficient, and unmanageable. The Panel recognizes multiple factors when determining whether the just and efficient conduct of a litigation will be advanced by transfer, including: (i) avoidance of conflicting rulings in various cases; (ii) prevention of duplication of discovery on common issues; (iii) avoidance of conflicting and duplicative pre-trial conferences; (iv) advancing judicial economy; and (v) reducing the burden on the parties by allowing division of workload among several attorneys. *See, e.g., In re Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369, 1369 (J.P.M.L. 2010); and *In re Bristol Bay Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976). All of these factors will be advanced by transfer and consolidation of the Related Actions.

Further, the Related Actions are all in the early stages and in a similar procedural posture. While some of the Defendants have been served with process, as of the date of this filing, only two of the defendants—CitiBank and Synovus—have answered or otherwise responded,[11] and several of the larger banks have asked for and obtained generous extensions of time to respond having been informed that this MDL application would be filed. Given the early stage of all the Related Actions, transfer and consolidation will enable the Action to realize significant benefits from centralized pre-trial proceedings. *In re Zostavax Prods. Liab. Litig.*, 330 F. Supp. 3d 1378, 1380 (J.P.M.L. 2018). By transferring and consolidating the Related Actions before a single MDL judge, pre-trial discovery and motions can be structured and coordinated for all the parties, which will reduce witness inconvenience, the cumulative burden on the courts, and the litigation's overall expense, as well as minimize the potential for conflicting rulings on issues related to the PPP loan

---

[11] Citibank is a named defendant in *American Video Duplicating, Inc., et al., v. Citigroup, Inc.*, 2:20-cv-03815 (C.D. Cal.). Synovus is named in *Sport & Wheat CPA PA v. ServisFirst Bank, Inc.*, 3:20-cv-05425 (N.D. Fla.).

program, the CARES Act, and the SBA Regulations.  *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."); and *In re Tylenol Mktg., Sales Practices and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) (centralization "prevent[s] inconsistent pretrial rulings (on Daubert issues and other matters)").

In litigating different cases involving the same factual and legal allegations, the parties face the prospect of district courts entering inconsistent rulings regarding discovery, class certification and the ultimate resolution of the disputes in these cases.  Multiple inefficiencies would occur as parties engage in duplicative discovery and motion practice involving the same central questions regarding the PPP loan program, the CARES Act, and the SBA Regulations.  Thus, the circumstances of these Related Actions dictate that transfer and consolidation is not only preferable, it is necessary for the just and efficient litigation of the parties' disputes.

**B.  THE NORTHERN DISTRICT OF GEORGIA BEFORE THE HONORABLE LEIGH MARTIN MAY IS THE APPROPRIATE TRANSFEREE FORUM FOR THIS CASE.**

The objectives of 28 U.S.C. § 1407 would be best served by sending the MDL to the Northern District of Georgia before Judge May who currently presides over the *Alliant* Action.  There is no central focal point for the litigations, so the ease of access, economical travel options, Atlanta's banking and financial services industry and its geographically central location make the Northern District of Georgia the appropriate transferee forum for this MDL.  The underlying considerations supporting coordination of all the Related Actions into one district for pre-trial proceedings would be satisfied with a transfer to the Northern District of Georgia.

**1.  The Northern District of Georgia is Convenient, Economical, and Safe.**

The goals of convenience and economy would be served by transferring the Related

Actions to the Northern District of Georgia.  Economy is an important factor, together with the experience, skill, and caseload of the judge to whom the MDL is assigned.  *Manual for Complex Litigation* (4th) § 20.131 ("The Panel uses no single factor to select the transferee district, but the Panel does consider where . . . the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." (footnote omitted)).  When the wrongdoing alleged is national, which it is here, there is "no single district [that] stands out as the geographic focal point." *In re New Motor Vehicles Canadian Exp. Antitrust Litig*., 269 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003).  The goal, therefore, should be to select a transferee court that is both economical and has the needed resources "to steer this litigation on a prudent course." *Id.*  The choice urged by Movant would fulfill that goal.

The Northern District of Georgia is a geographically central district for this litigation, providing a convenient forum for counsel and their clients to participate fully in the litigation without incurring undue expense.  This Panel has emphasized the fact that "although air travel renders both [coasts of the United States, California and New York] readily accessible, there is still something to be said for the convenience of a geographically central forum." *In re Library Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968).  The wrongdoing alleged is national, which means that "no single district stands out as the geographic focal point." *In re New Motor Vehicles Canadian Exp. Antitrust Litig*., 269 F. Supp. 2d at 1373.  The goal, therefore, should be to select a transferee court with the needed resources and a transferee judge with the time and requisite experience "to steer this litigation on a prudent course." *Id.*  The choice urged by Movant would fulfill that goal.

The Northern District of Georgia is also readily accessible to parties and counsel.  Atlanta is home to Hartsfield–Jackson Atlanta International Airport, which serves 100 million

14

passengers/year and offers several direct incoming and outgoing flights to every major city in the U.S. daily.  It is located minutes away from the Northern District of Georgia federal courthouse, making the courthouse convenient and easy to access because it is located close to Atlanta's MARTA mass transit system and hotels.  This Panel has also repeatedly recognized that the Northern District of Georgia is an appropriate transferee forum and is convenient to parties and witnesses.  *In re Equifax, Inc*., 289 F. Supp. 3d 1322, 1324 (J.P.M.L. 2019); *In re Airline Baggage Fee Antitrust Litigation*, 655 F. Supp. 2d 1362, 1362 (J.P.M.L. 2009).

The Northern District of Georgia is also safer from a health perspective than many of the alternative venues.  COVID-19 has ravaged the Northeast and the West Coast, while Georgia was the first state to begin re-opening procedures, and it has recently seen its Coronavirus related hospitalizations dip below 1,000 for the first time since that statistic has been measured.

### 2.   The Northern District of Georgia's Banking and Financial Industry Gives it a Sufficiently Strong Connection to This Litigation.

The Northern District of Georgia has a strong connection to the banking and financial services industry and is geographically central to the larger defendants.  In the United States, JPMorgan Chase, Bank of America, Wells Fargo, and Citigoup (the "Big Four") hold roughly 50% of all U.S. banking assets.[12]  JPMorgan Chase and Citigroup are headquartered in New York, New York, which is just 850 miles and a short flight from Atlanta.[13]  Bank of America is headquartered

---

[12]   Federal Reserve, "Large Commercial Banks," available at https://www.federalreserve.gov/releases/lbr/current/default.htm (last accessed May 20, 2020); Business Insider, "Here is a list of the largest banks in the United States by assets in 2020," available at https://www.businessinsider.com/largest-banks-us-list (last accessed May 20, 2020).

[13]   *See* https://www.jpmorganchase.com/corporate/investor-relations/document/annualreport-2019.pdf (last accessed May 20, 2020); https://www.citigroup.com/citi/about/countries-and-jurisdictions/united-states-usa.html (last accessed May 20, 2020).

250 miles from Atlanta in Charlotte, North Carolina.[14]  Truist Bank is the sixth largest bank in nation, and it is also headquartered in Charlotte, North Carolina.[15] JPMorgan Chase, Wells Fargo, Bank of America, and Truist Bank all have corporate offices and branch locations within the Northern District of Georgia.  Wells Fargo is headquartered in San Francisco, California which also has direct flights into Atlanta.[16]

Although there is no current reporting on exactly which Lenders processed the greatest number of PPP loans or the largest approved sums, it is clear that each of these banks had significant volumes and sums of PPP loans.[17]  Additionally, while Regions Bank (the No. 22 Largest Commercial Bank) is headquartered in Birmingham, Alabama, Regions has a corporate office in Atlanta as well.  Georgia is also the corporate headquarters of Synovus Bank (No. 39), Ameris Bank (No. 78), Cadence Bank (No. 82), and United Community Bank (No. 107), each of which is a named defendant.[18]  Ultimately, there are several defendants that are headquartered in the Northern District of Georgia, and this venue is centrally located to some of the largest banks in the U.S., which makes it an ideal venue for a litigation of this type.

### 3.  The Northern District of Georgia has Extensive Experience With MDL Litigation, has Ample Resources, and has a Low Current Case Load.

The staff and Clerk's office of the Northern District of Georgia are well-equipped and experienced to provide the necessary support services for managing this litigation.  It is also a

---

[14] http://investor.bankofamerica.com/contact-us/contact-ir (last accessed May 20, 2020).

[15] https://www.charlotteobserver.com/news/article238596963.html (last access May 20, 2020).

[16] https://www.wellsfargo.com/about/corporate/governance/contact/ (last accessed May 20, 2020).

[17]  Business Insider, "PPP SMALL BUSINESS LOANS: How $659 billion in coronavirus-linked loans are being spread across lenders, states, and industries," available at https://www.businessinsider.com/ppp-small-business-loan-report (last accessed May 20, 2020).

[18] https://www.federalreserve.gov/releases/lbr/current/default.htm (last accessed May 20, 2020).

currently underutilized district in an otherwise busy federal court system, which further favors transfer to this District.  The Northern District of Georgia only has four (4) MDLs currently pending, and two are assigned to Chief Judge Thomas W. Thrash, Jr. [19]  No MDLs are assigned to Judge May.  On the other hand, other venues featuring claims against defendants, like the Northern District of Illinois, feature heavy MDL caseloads.  *Id.*

The Northern District of Georgia also compares favorably to all other districts of the country in the speed by which it disposes of civil cases, particularly in the time from filing to trial.[20]  Additionally, the Northern District of Georgia has ample capacity to host this litigation; the district has had 26 MDLs assigned to it in the past, which serves as proof that consolidation of related cases in the district has repeatedly served the objectives of economy, efficiency, and convenience.[21]  The Northern District of Georgia has a state-of-the-art courthouse in Atlanta, Georgia, where Judge May presides, which further reinforces its suitability for this litigation.  For these reasons, the district "possesses the necessary resources, facilities, and technology to sure-handedly devote the substantial time and effort to pretrial matters that this complex docket is likely to require."  *In re Baycol Prod. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001).

---

[19] *See* MDL Statistics Report - Distribution of Pending MDL Dockets by District, as of April 15, 2020, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-15-2020.pdf.

[20] This District has among the shortest times for time from filing to disposition at trial.  *See* "United States District Courts – Median Time Intervals From Filing to Disposition of Civil Cases Terminated – March 31, 2019," available at https://www.uscourts.gov/file/26391/download  (last accessed May 19, 2020) (showing N.D. Ga. at 23.4 months; D. Ariz. at 29.5; N.D. Ala. at 35.6 months; N.D. Ill. at 33.6 months; D. Colo. at 29.0 months; N.D. Fla. at 32.4 months; E.D. Pa. at 20.5 months; S.D. Ohio at 24.0 months; C.D. Cal. at 22.3 months; D. Ut. at 45.4 months for 2018 -- 2019 statistics unavailable).

[21] *See* https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2019.pdf (last accessed May 14, 2020).

### 4. Judge May Is Well-Qualified to Efficiently and Effectively Handle This MDL.

Judge May was nominated to the federal bench in 2013. Prior to being confirmed, she had been a partner at the Atlanta office of the law firm of Butler, Wooten & Fryhofer LLP since 2000, where her practice focused on complex civil litigation in both state and federal courts. Additionally, Judge May has experience managing large and complex civil litigation, and she has earned a reputation in the District as a smart, prepared, and organized judge. Selecting the Northern District of Georgia and Judge May would centralize the cases before "a transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation." *In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007).

Although Judge May has not yet presided over an MDL, she possesses the qualifications and skill to preside over one. Judge Selna also had no prior MDL experience before the Panel transferred the Toyota Unintended Acceleration cases to him. *See In Re Toyota Motor Corp. Unintended Acceleration*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (transferring to Judge Selna, who had only been on the bench for seven years at the time).[22] The fact that Judge Selna had not previously presided over an MDL did not dissuade the Panel. The Panel noted that Judge Selna was "a well regarded and skilled jurist," who had almost "28 years of private law practice at the very highest levels and in some of the most complex cases," which made him "well prepared for a case of this magnitude." *Id.* With her experience and skill, Judge May is also prepared for a case of this magnitude and would efficiently and effectively manage this litigation.

---

[22] https://www.cacd.uscourts.gov/sites/default/files/documents/JVS/AD/Resume.pdf.

**C. IN THE ALTERNATIVE, THE DISTRICT COURT OF ARIZONA BEFORE JUDGE HUMETEWA IS AN APPROPRIATE TRANSFEREE FORUM FOR THIS CASE.**

In the alternative, Movant respectfully requests that the Related Actions be transferred to the District of Arizona before the Honorable Diane J. Humetewa, who presides over the Related Action *Panda Accounting, LLC v. Academy Bank, N.A., et al.*, C.A. 2:20-cv-00985-DJH (D. Ariz.).

**1. The District of Arizona is Convenient and Economical.**

The District of Arizona offers a convenient and economical alternative to the Northern District of Georgia. The District of Arizona is readily accessible to all parties, witnesses and counsel. Phoenix hosts the Phoenix Sky Harbor International Airport which is among the largest commercial airports in the United States, allowing for parties, witnesses and counsel to easily travel to the jurisdiction with minimal expense. In addition, the District of Arizona's courthouse is located near Phoenix's mass transit system, the Valley Metro light rail, and numerous hotels, making the courthouse convenient and easy to access. The District of Arizona is also centrally located among the majority of the other Districts of the Related Actions. The majority of the Related Actions are located in Districts located in either the Midwest (Northern District of Illinois and the Northern District of Ohio) or the West Coast[23] (District of Arizona, Central District of California, the District of Colorado, and the District of Utah). Further, the District of Arizona is known for its efficient civil docket from filing to trial (*see, supra,* fn. 20), and its stellar capabilities have made it the site of 17 MDLs to date (*see, supra,* fn. 21).

---

[23]     *Panda Accounting LLC v. Academy Bank NA, et al.,* 2:20-cv-00985 (D. Ariz.); *American Video Duplicating, Inc., et al., v. Citigroup, Inc.*, 2:20-cv-03815 (C.D. Cal.); *Brunner Accounting Group v. SVB Financial Group, et al.*, 2:20-cv-04235 (C.D. Cal.); *American Video Duplicating, Inc., et al., v. Royal Bank of Canada, et al.*, 2:20-cv-04036 (C.D. Cal.); *IMPACCT, LLC v. JPMorgan Chase & Co.*, 1:20-cv-01344 (D. Colo.) and *Panda Group, PC d/b/a Panda Accounting v. Bank of America Corp.*, 4:20-cv-00045 (D. UT.).

### 2.   Many of the Defendants Have Connections to the District of Arizona.

Thirty-four (34) defendants,[24] including the four largest banks in the US, have branch locations in Phoenix and conduct business in the District of Arizona, making it a strong alternative venue for this litigation.

### 3.   Judge Humetewa Would Capably Shepherd This MDL to its Conclusion.

A federal judge since 2014 and a U.S. Attorney, trial litigator, and professor prior to that, the Hon. Diane J. Humetewa has the experience and background to efficiently and effectively handle this MDL.  Judge Humetewa has not presided over an MDL to date, a factor the Panel has not dissuaded the Panel when determining candidates to oversee MDL proceedings.  *See In Re Toyota Motor Corp. Unintended Acceleration,* 704 F. Supp. 2d at 1382.

## IV.   CONCLUSION

All Related Actions in this matter, and any later "tag-alongs," should be centralized pursuant to 28 U.S.C. § 1407.  The Northern District of Georgia should be the site of the MDL, and the matter should be assigned to the Hon. Leigh Martin May.  In the alternative, the Related Actions should go to the District of Arizona, before the Hon. Diane J. Humetewa.

---

[24]    Bank of America Co., Bank of America N.A., Bank of Oklahoma, Bank OZK, BOK Financial Corp., Chase Bank U.S.A N.A., Citibank N.A., Citigroup Inc., F.N.B Corp., First Financial Bancorp, Harvest Small Business Finance, Honat Bancorp Inc., Huntington Bancshares, Inc., JPMorgan Chase & Co., JPMorgan Chase Bank N.A., Kabbage, Inc., Midwest Regional Bancorp, Inc., Midwest Regional Bank, Mountain America Federal Credit Union d/b/a Mountain America Credit Union, MUFG Bank Ltd., MUFG Union Bank N.A., Newtek Small Business Services, Inc., Regions Financial Corporation, Regions Bank, Royal Bank of Canada, The PNC Financial Services Group, Inc., U.S. Bancorp, U.S. Bank, NA, Vectra Bank Colorado, Wells Fargo & Co., Wells Fargo, NA, Wintrust Bank, NA, Wintrust Financial Corporation, Zions Bancorporation, N.A.

Dated:  May 22, 2020                    Respectfully submitted,

 

                                            */s/ James F. McDonough, III*

**GERAGOS & GERAGOS, PC**           **HENINGER GARRISON DAVIS, LLC**
Mark Geragos, Esq.                    James F. McDonough, III, Esq.
Ben Meiselas, Esq.                    Travis Lynch, Esq.
644 South Figueroa Street        3621 Vinings Slope, Suite 4320
Los Angeles, California 90017     Atlanta, GA 30339
Telephone: (213) 625-3900       Telephone: 404-996-0869
Facsimile: (213) 232-3255        Facsimile: 205-326-3332
Email: mark@geragos.com        jmcdonough@hgdlawfirm.com
Email: ben@geragos.com         tlynch@hgdlawfirm.com

**ZUMPANO PATRICIOS & POPOK, PLLC**         **ZIMMERMAN REED LLP**
Michael S. Popok, Esq.         Brian C. Gudmundson, Esq.
Mitchell G. Mandell, Esq.       Michael Laird, Esq.
417 Fifth Avenue, Suite 826      1100 IDS Center
New York, NY 10016           80 South Eighth Street
Telephone: (212) 381-9999     Minneapolis, MN 55402
Facsimile: (212) 320-0332      Telephone: (612) 341-0400
Email: mpopok@zplaw.com     Facsimile: (612) 341-0844
Email: mmandell@zplaw.com    Email: brian.gudmundson@zimmreed.com
                                              Email: michael.laird@zimmreed.com

*Attorneys for Movant Alliant CPA Group, LLC (Alliant CPA Group, LLC v. Bank of America, Corp. et al., Case No. 1:20-cv-02026, N.D. GA. May 11, 2020).*