**ATTACHMENT N**

**Docket Sheet and Complaint**
**For**
*Fruci & Associates, PS v. A10 Capital LLC et al.,* W.D. Wash. No. 2:20-cv-00864

**United States District Court**
**For The Western District Of Washington**

| | |
|---|---|
| Fruci & Associates, PS, for itself and on behalf of a class of similarly situated businesses and individuals, | |
| *Plaintiff,* | No. 3:20-cv-864 |
| v. | Class Action Complaint |
| A10 Capital LLC, First Interstate BancSystem, KeyBank N.A., Mountain West Bank, Numerica Credit Union, Sound Community Bank, State Bank Northwest, U.S. Bank, NA, Washington Trust Bank, Wells Fargo Bank, N.A., Wheatland Bank, Inc., | Jury Trial Demanded |
| *Defendants.* | |

Plaintiff Fruci & Associates, PS brings this class action on behalf of itself and those similarly situated (hereinafter "Plaintiff") against Defendants A10 Capital LLC, Banner Bank, First Interstate BancSystem, Keybank, Mountain West Bank, Numerica Credit Union, RiverBank, Sound Community Bank, State Bank NW, US Bank, Washington Trust, Wells Fargo Bank, and Wheatland Bank (collectively, "Defendants" or the "Lenders"), for agent fees due to it from Defendants as a participant in the Federal Paycheck Protection Program. For its class action complaint ("Complaint"), Plaintiff alleges as follows based upon its knowledge, and upon information and belief including investigation conducted by its attorneys:

### I.    Parties

1.  Plaintiff Fruci & Associates, PS ("Fruci"), is a professional service corporation and CPA firm, organized and authorized to do business, and doing business, in the State of Washington since 1938, with its office located in Spokane, Washington.

2.  Kemper Rojas ("Kemper") is the Managing Partner and a Governor of Fruci. Kemper is a CPA in good standing since 2010. The mission of Fruci is to maximize the financial welfare of the individuals and businesses they serve.

3.  On information and belief, Defendant A10 Capital LLC ("A10"), is an Idaho corporation and Foreign Limited Liability Company. Upon information and belief, A10 conducts substantial business in this District.

4.  On information and belief, Defendant First Interstate BancSystem ("FIB") is a Montana corporation and a state-chartered bank. Upon information and belief, FIB conducts substantial business in this District.

5.  On information and belief, Defendant KeyBank N.A. ("Key") is the primary subsidiary of KeyCorp, an Ohio corporation headquartered in Cleveland, Ohio. Key conducts substantial business within this district.

6.  On information and belief, Defendant Mountain West Bank ("MWB") is a subsidiary of Glacier Bancorp, which is a Montana corporation and a federally-chartered bank. Upon information and belief, MWB conducts substantial business in this District.

7.  On information and belief, Defendant Numerica Credit Union ("NumericaCU") is a Washington nonprofit Corporation. Upon information and belief, NumericaCU conducts substantial business in this District.

8.  On information and belief, Defendant Sound Community Bank ("SoundCB"), a wholly-owned subsidiary of Sound Financial Bancorp, Inc. is a Maryland corporation and a Washington state-chartered commercial bank. Upon information and belief, SoundCB conducts substantial business in this District.

9.  On information and belief, Defendant State Bank Northwest ("State Bank") is a Washington corporation and a state-chartered bank. Upon information and belief, State Bank conducts substantial business in this District.

10. On information and belief, Defendant U.S. Bank, NA ("US Bank") is a subsidiary of US Bancorp, a Delaware corporation. US Bank is a federally-chartered bank. Upon information and belief, US Bank conducts substantial business in this District.

11. On information and belief, Defendant Washington Trust Bank ("WTB") is a Washington corporation and a Washington-chartered bank. Upon information and belief, WTB conducts substantial business in this District.

12. On information and belief, Defendant Wells Fargo Bank, N.A. ("Wells") is a subsidiary of Wells Fargo & Co., a Delaware corporation. Wells is a federally-chartered bank. Upon information and belief, Wells conducts substantial business in this District.

13. On information and belief, Defendant Wheatland Bank, Inc. ("Wheatland") is a Washington corporation and federally-chartered bank. Upon information and belief, Wheatland conducts substantial business in this District.

14. In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## II.   Jurisdiction And Venue

15. This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a proposed nationwide class action in which: (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed Class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

3

16. This Court has personal jurisdiction over Defendants because Defendants are residents of Washington and this judicial District, do business in this District, and/or a substantial number of the events giving rise to the claims alleged herein took place in Washington and this District.

17. The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied on behalf of its clients for PPP loans while in this District, and Defendants marketed, promoted, and took applications for PPP loans in this District.

### III.     Factual Allegations

18. On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus known as COVID-19.

19. On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

20. On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

21. On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States that declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

22. The Trump Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Small Business Administration - Business Loan Program Temporary Changes; Paycheck Protection Program*, *13 CFR Part 120*, *Interim Final Rule* (the "SBA PPP Interim Final Rule").

23. On March 25, 2020, in response to the economic damage perpetrated by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act" or the "Act").  The CARES Act (P.L. 116-136) was passed by the House the following day and signed into law by President Trump on March 27, 2020.

4

24. The Act included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses nationwide.

25. As part of the CARES Act, the Federal Government created the $349 billion loan program, referred to as the "Paycheck Protection Program" ("PPP"), providing loans to small businesses originated from February 15, 2020, through June 30, 2020.  The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls. The loans are backed by the SBA, administered by Treasury, and funded through private lenders, including banks and financial services firms ("Lenders").  Pursuant to the SBA PPP Interim Final Rule, the PPP is a limited funding program, as funds are provided on a "first-come, first-served basis."  See 13 CFR Part 120, p. 13.

26. Treasury announced on April 3, 2020, that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well[1].

27. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

28. Treasury's PPP Information Sheet (Lenders) (the "PPP ISL"), consistent with the SBA PPP Interim Final Rule (collectively, the "SBA Regulations"), creates a system with three (3) participants:

    a.   A Lender who funds the PPP loans backed by the Federal Government;

---

[1] https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf

b. A small or medium-sized "main street" borrower who obtains the PPP loan for the specified purpose (the "Borrower"); and

c. An independent agent (the "Agent"), often a local accountant, business consultant, attorney, employee of the applicant, or payroll service, who brings the Borrower to Lenders and helps shepherd the Borrower through the PPP loan process.

29. It is through the Agent that the PPP ensures the proper and efficient allocation of a limited pool of dollars under its "first come, first serve" approach.  Under the SBA Regulations, **both** the Lenders **and** Agents are paid mandatory fees under the PPP for their respective work.

30. The SBA Regulations define Agent as an "authorized representative," which broadly includes:

a. "An attorney;

b. An accountant;

c. A consultant;

d. Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

e. Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

f. A loan broker; or

g. Any other individual or entity representing an applicant by conducting business with the SBA."[2]

31. Without the critical and necessary work performed by Plaintiff and the Class Members as Agents under the PPP, the CARES Act would not accomplish the United States Senate's expressed legislative intent:  The Senate requested Treasury to "issue guidance to lenders and agents to ensure that the … loans prioritizes small business concerns and entities in

---

[2] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf

6

underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years."[3] [Emphasis added].

32. The SBA Regulations also expressly provide how each of the PPP participants (Borrower, Lender, and Agent) will benefit from (and be compensated under) the PPP.  For example, the PPP Borrower receives 100 percent of the loan without any deductions for fees or costs.

33. For the Lenders, the SBA Regulations provide that they will be compensated based on the balance of the financing at the time of final disbursement. Specifically, the SBA will pay Lenders fees in the following amounts for processing PPP loans:

    a.   Five percent (5%) for loans of not more than $350,000;

    b.   Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

    c.   One percent (1%) for loans of at least $2,000,000[4].

34. For the Agents, the SBA Regulations provide that "Agent fees will be paid out of lender fees. The lender will pay the agent. Agents may not collect any fees from the applicant. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:

    a.   One (1) percent for loans of not more than $350,000;

    b.   0.50 percent for loans of more than $350,000 and less than $2 million; and

    c.   0.25 percent for loans of at least $2 million" (the "Agent Fees"). (Emphasis Added).[5]

---

[3] H.R. 748, CARES ACT, PL 116-136 (March 27, 2020; 134 Stat. 281)

[4] *Id.*

[5] *Id.*

35. The SBA Regulations also reflect that the Secretary of the Treasury, "determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans.

36. Based on information and belief, Defendants funded PPP loans for Borrowers represented by Plaintiff and the proposed Class, received their Lender Fees from the Federal Government, and failed to pay the Agent Fees earned by the Plaintiff and proposed Class out of the Lender Fees received.

37. Defendants have either failed and refused to pay, or are willing to pay only a partial percentage of, the monies owed in Agent Fees to Plaintiff and the proposed Class, thus retaining for themselves all of the statutory fees allotted by the Government for Agents as part of the PPP, despite the work performed by the Agents in assisting the Borrowers in securing their PPP loans.

**Plaintiff, in its Role as Agent, Assists its Clients With Applying for PPP Loans Under the CARES ACT**

38. On or about March 27, 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that the COVID-19 crisis would severely impact its clients' businesses, assisted its clients with obtaining PPP loans through a specific Defendant.

39. Plaintiff spent considerable time familiarizing itself with the Act, and the related SBA Regulations, and, in particular, (a) Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and (b) Section 1106 of the Act which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

40. In or about April 2020, Plaintiff, in its role as Agent, assisted its clients as Borrowers under the PPP in the gathering and analysis of their documents, as well as the calculation and preparation of each loan application (the "Application(s)"), and in identifying Lenders who were processing PPP loans in the "race to the bank" environment that ensued as a result of the first-come, first-serve nature of the PPP.

8

41. Based on the SBA Regulations, Plaintiff understood that the only compensation it would receive was from the mandated Agent Fees that were advanced to the Lenders by the Federal Government for the Plaintiff's and Class Members' benefit as part of the statutory Lender Fees.

42. To prepare the documentation, Plaintiff assisted clients in gathering the required information and preparing the Applications, including the following, where applicable or necessary:

    a.   Loan Calculator Spreadsheet;

    b.   SBA Form 2483;

    c.   Addendum A: Affiliates;

    d.   Information on whether the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

    e.   Certificate of Beneficial Ownership Interest;

    f.   Driver's Licenses;

    g.   Articles of Incorporation or Articles of Organization;

    h.   2019 IRS/State Payroll Forms;

    i.   2019 Payroll Summary Report by each Employee;

    j.   2019 Health Insurance Premium Paid, including each monthly statement or year-end summary;

    k.   2019 Retirement Matching Plan Paid, including each monthly statement or year-end summary;

    l.   2020 1st QTR 941 Form;

    m.   January 2020 Payroll Summary by Employee;

    n.   February 2020 Payroll Summary by Employee;

    o.   March 2020 Payroll Summary by Employee;

    p.   Health Insurance Premium Paid – January, February, and March 2020;

9

q.  Retirement Matching Plan Paid – January, February, and March 2020;

r.  Wiring Instruction; and

s.  Copy of the Borrower's most recent bank statement,

(collectively, (a) – (s) above are part of the Application).

43. In addition, Plaintiff worked to identify Lenders who were taking Applications and funding PPP loans to connect the Borrowers to the limited federal funds available under the PPP.

44. In good faith, Plaintiff believed it would receive its earned Agent Fees from the Lenders after the funding of each of its clients' PPP loans as required by the SBA Regulations.

45. Defendants did not comply with the SBA Regulations in distributing the Agent Fees from their Lender Fees paid to them by the Federal Government under the PPP.

46. Specifically, Defendants as Lenders under the PPP, and without any legal authority under the SBA Regulations or otherwise, refused to pay Agents the required statutory Agent Fees from the fees they obtained from the Government despite demand, or the Defendants repudiated the Agent's role and refused to pay the required Agent Fees as a general policy.

47. As a result of Defendants' unlawful actions, Plaintiff and the proposed Class has suffered financial harm by being deprived of the statutorily mandated compensation for the professional services that it provided in connection with assisting its clients in applying for and obtaining PPP loans, and by being denied by Defendants just compensation for playing the vital role of Agent in the PPP process on behalf of the intended beneficiaries of the program, the small business owner.

**Class Action Allegations**

48. As noted above, Plaintiff brings this action on behalf of itself and all others similarly situated as a state and nationwide Class, defined below.

49. Plaintiff, in accordance with Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and (b)(4), seeks to represent a Class composed of and defined as follows:

10

a. All Agents as that term is defined by the SBA Regulations that facilitated businesses in receiving a loan under the PPP, i.e., met the criteria for eligibility and were not otherwise ineligible, between February 15, 2020, and June 30, 2020, who timely applied for a PPP loan through various Lenders and were processed and approved for funding (the "Class").

b. An "Agent" as defined by the SBA Regulations is as follows:

  i. an attorney,

  ii. an accountant,

  iii. a consultant,

  iv. someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant,

  v. someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans,

  vi. a loan broker, or

  vii. any other individual or entity representing an applicant by conducting business with the SBA.

50. Plaintiff reserves the right to expand, limit, modify or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

51. *Numerosity:* The Class is composed of thousands of Agents (the "Class Members") whose joinder in this action would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

52. *Commonality:* There is a commonality in questions of law and fact affecting the Class. *See* Fed. R. Civ. P. 23(a)(2). These questions of law and fact include, but are not limited to, the following:

a. Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds?

b. Did Defendants comply with their legal obligations under the terms of the CARES Act as a lender of the PPP funds?

c. Did Defendants have a policy and/or practice of failing to compensate Agents and pay them the required Agent Fees for their work in facilitating PPP loans to the detriment of the Class?

d. Did Defendants prioritize their origination fees over abiding by the CARES Act and PPP specifications?

e. Did Defendants' conduct constitute intentional tortious interference with economic relations?

f. Did Defendants' conduct constitute a conversion of the Agent Fees owed to the Plaintiff and the proposed Class?

g. Did Defendants possess exclusive knowledge of material facts, with respect to the Application process, i.e., that the Agents would not receive the required Agent Fees compensation when assisting applicants with PPP loan process?

h. Did Defendants actively conceal a material fact or facts from the Plaintiff, i.e., that the Agent was not going to receive its earned Agent Fees when assisting with the Applications?

i. Whether Defendants' conduct, as alleged herein, was intentional and knowing?

j. Did Defendants frustrate and tortuously interfere with Plaintiff and the Class Members reasonable expectations of receiving the Agent Fees when assisting the Borrowers for PPP loans that were funded;

k. Whether Class Members are entitled to damages and/or restitution, and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein?

l. Whether Defendants are likely to continue to mislead the public and Class

1          Members and continue to violate SBA Regulations regarding paying Agent

2          their earned fees under the CARES Act; and

3        m. Whether Plaintiff and Class Members are entitled to an award of reasonable

4          attorneys' fees, pre-judgment interest, and costs of suit.

5  53. *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed

6     to act on grounds generally applicable to Plaintiff and other Class Members. Such behavior

7     requires the Court's imposition of uniform relief to ensure compatible standards of conduct

8     toward Class Members.  A class action is superior to all other available means for the fair and

9     efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class

10    Members could afford to seek legal redress of the wrongs complained of herein on an

11    individual basis.  Absent a class action, Class Members and the general public would not likely

12    recover, or have the chance to recover, damages or restitution, and Defendants would be

13    permitted to retain the fruits of their misdeeds.  Any difficulties that might occur in the

14    management of this proposed class action are insubstantial.  See Fed. R. Civ. P. 23(b)(1)(A).

15  54. *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class

16    Members.  See Fed. R. Civ. P. 23(a)(3).   Plaintiff and the Class Members have all been

17    deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as

18    alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class

19    Member as a result of Defendants' actions are described herein. Defendants' purported

20    defenses to the claims, both legal and factual, are typical of the defenses they would try to raise

21    to the Class claims.

22  55. *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the

23    Class, and Plaintiff's interests do not conflict with the interest of the other Class Members that

24    Plaintiff seeks to represent.  *See* Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately

25    represent and protect the interest of the other Class Members.  Plaintiff has retained counsel

26    with substantial experience in litigating complex cases, including consumer fraud and class

27    actions.  Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the

13

1  Class and have the financial ability to do so.  Neither Plaintiff nor counsel has any interest

2  adverse to other Class Members.

3  56. *Ascertainability*: Plaintiff is informed and believes that Defendants keep extensive electronic

4  records of their loan Applications through, *inter alia*, computerized loan application systems,

5  and Federally mandated record-keeping practices.  Defendants have one or more databases

6  through which all of the borrowers may be identified and ascertained, and it maintains contact

7  information, including email and mailing addresses.  From this information, the existence of

8  the Class Members (i.e., the Agent for the Borrower) can be determined, and thereafter, a notice

9  of this action can be disseminated in accordance with due process requirements.

10  57. *Predominance:* The above questions of law and fact predominate over individual questions

11  affecting the Class Members.  Defendants' conduct described in this Complaint all stems from

12  ignoring their obligations under the SBA Regulations setting forth the policy and procedures

13  for payment of Agent Fees that are readily calculable from Defendants' records and other

14  Class-wide evidence. Class Members do not have an interest in pursuing separate individual

15  actions against Defendants as the amount of each Class Member's claim is relatively small

16  compared to the expense and burden of individual prosecution.  The management of this action

17  as a class action will not present any likely difficulties. In the interests of justice and judicial

18  efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in

19  a single action.  *See* Fed. R. Civ. P. 23(b)(3).

20  58. Neither the Plaintiff nor the Class has previously litigated the claims asserted in this Complaint.

21  **Count I (Declaratory Relief)**

22  59. Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged

23  herein.

24  60. Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents

25  defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv)

26  someone who prepared an applicant's application for financial assistance and is employed and

27  compensated by applicant; (v) someone who assists a lender with originating, disbursing,

1   servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual

2   or entity representing an applicant by conducting business with the SBA.

3   61. Plaintiff, as an Agent under the PPP, assisted its clients with submitting the Applications to

4   obtain PPP loans under the CARES Act.  Defendants failed to pay Agent Fees owed to Plaintiff

5   as required by SBA Regulations. Instead, Defendants kept all of the origination and processing

6   fees for themselves, in direct violation of the SBA Regulations.

7   62. An actual justiciable controversy has arisen between Plaintiff and Defendants as to the Agent

8   Fees owed to Plaintiff by Defendants, and, upon information and belief, Defendants either deny

9   that any Agent Fees are owed to Plaintiff or claim that only a percentage of the Agent Fees are

10  owed.

11  63. Plaintiff and the Class Members have a legally protectable interest under the SBA Regulations

12  in that they are entitled to their mandated Agent Fees in connection with the professional

13  services rendered to their clients in preparing and submitting Applications for PPP funds.

14  64. Defendants have failed and refused, and continue to fail and refuse, to pay the mandated Agent

15  Fees to the Agents as required under the SBA Regulations.

16  65. Plaintiff and the Class Members seek a declaration in accordance with SBA Regulations that

17  Defendants are required under the SBA Regulations to pay the Agent Fees at the statutory

18  amount on each loan funded involving an Agent.

19  **<u>Count II</u>**

20  **<u>(TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS)</u>**

21  66. Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged

22  herein.

23  67. Plaintiff asserts this cause of action on behalf of itself and the other Class Members as Agents.

24  68. Defendants have intentionally and tortuously interfered with Plaintiff's and the Class

25  Members' economic relations by circumventing and ignoring their obligations to comply with

26  the Agent Fee payment requirements under the SBA Regulations and improperly retaining

27  monies owed to Agent.

69. Upon information and belief, Defendants improperly allege that Plaintiff and the Class Members are not entitled to the Agent Fees, or are only entitled to a portion of the Agent Fees, despite the clear and unambiguous terms in the SBA Regulations.

70. Defendants knowingly and intentionally engaged in lending to businesses under the PPP and thus were required to abide by the obligations unambiguously set forth in the SBA Regulations to pay Plaintiff the mandated Agent Fees.

71. Plaintiff, as well as all Class Members, engaged in helping clients apply for PPP loans with the reasonable expectation, consistent with the SBA Regulations, that while they were not permitted to charge their clients fees in assisting with the Applications, they would receive as compensation the mandated Agent Fees from the Lenders once a loan to a Borrower represented by an Agent was funded.

72. Plaintiff and the Class Members also chose specific Defendants to place the Borrowers with the expectation of being paid the Agent Fees as a PPP Agent under the SBA Regulations.

73. Defendants are well aware or should have been aware of the mandated Agent Fees under the SBA Regulations.  Nevertheless, Defendants have improperly chosen to retain the Agent Fees owed to Plaintiff and the Class.

74. Defendants' acts constitute intentional and tortious interference with Plaintiff's and the Class Members' economic relations because Defendants improperly and wrongfully withheld monies owed to Plaintiff that were provided for pursuant to the SBA Regulations and that Plaintiff earned.

75. Defendants' improper acts or practices of refusing to pay Plaintiff and the proposed Class the mandated Agent Fees, and their failure to adhere to the SBA Regulations as to the PPP loans, are the proximate cause of the damages sustained by Plaintiff and the Class Members.

76. Defendants have used improper means to obtain money from the Federal Government at the expense of Plaintiff and the Class by:

      a.   failing to adhere to the SBA Regulations;

      b.  wrongfully informing the Agents such as Plaintiff and the Class Members that they would not receive any compensation for the work they performed, and/or

      c.  letting the Agent bring the Borrower to the Defendants for a PPP loan, but then telling the Agent after the fact that they would not be paid, or paid less than the mandated Agent Fee.

77. As a result, Defendants have engaged in intentional and tortious interference with Plaintiff's and the Class Members' economic relations.

78. Defendants' conduct manifests a knowing and reckless indifference towards, and a disregard of, the rights of Plaintiff and the Class Members.

79. Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if the relief requested herein is not granted.

80. Plaintiff and the Class Members request this Court to cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated by Defendants to Plaintiff and all Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members compensatory damages, and such other damages and relief this Court deems just and proper.

## <u>COUNT III</u>

## <u>(UNJUST ENRICHMENT)</u>

81. Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

82. Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents.

83. Defendants have been, and continue to be, unjustly enriched, to the detriment and at the expense of Plaintiff and the Class Members as a result of Defendants' wrongful withholding of Agent Fees from the Lender Fees they received, and are now owed to Plaintiff and the Class.

84. Defendants have been unjustly benefitted through the unlawful and wrongful retention of monies due to the Agents (i.e., the Agent Fees) as a result of the funding of the PPP loans, and Defendants receipt of their Lender Fees under the same program.  Specifically, Defendants

1  retained for their benefit Agent Fees that Plaintiff and the Class were entitled to be paid for

2  work performed, and continue to benefit to the detriment and at the expense of Plaintiff and

3  the Class Members.

4  85. Plaintiff and the Class Members chose specific Defendants to place the Borrowers and the PPP

5  Loans, with the reasonable expectation of being paid as an Agent under the SBA Regulations.

6  86. Defendants are intentionally retaining the monies allocated by the Federal Government for

7  Agent Fees and paid to Defendants as part of their Lender Fees, despite knowing that said

8  monies are owed to Plaintiff and the Class Members.

9  87. Defendants refuse to pay, or are willing to pay only a partial percentage of the monies owed to

10  Plaintiff and the Class Members, and are choosing to retain the Agent Fees for themselves in

11  direct violation of SBA regulations.

12  88. It is against equity and good conscience that Defendants be permitted to retain the benefits

13  conferred upon them by Plaintiff and the Class Members.

14  89. Defendants' conduct manifests a knowing and reckless indifference toward, and a disregard

15  of, the rights of Plaintiff and the Class Members.

16  90. Accordingly, Defendants should not be allowed to retain the benefits conferred upon them by

17  the Plaintiff and the Class Members.

18  91. Plaintiff and the Class Members request this Court to cause Defendants to disgorge the amount

19  of the Agent Fees wrongfully misappropriated by Defendants to Plaintiff and all Class

20  Members, enjoin Defendants from continuing the improper acts as discussed herein, and award

21  Plaintiff and all Class Members such other damages and relief that this Court deems just and

22  proper.

23  **COUNT IV**

24  **(CONVERSION)**

25  92. Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged

26  herein.

27

18

93. Plaintiff and the other Class Members have an immediate right to the mandatory and identifiable Agent Fees owed to them under the SBA Regulations.

94. Under the PPP, the Agent cannot look to the Treasury for direct payment of their Agent Fees. Instead, the Agent Fees are paid to the Lender as part of the Lender Fees, and the Lender is obligated to pay the Agent Fees over to the Agent.

95. As alleged herein, the Agent Fees were paid to the Lenders as part of the Lender Fees paid to each Defendant for each Borrower's loan. The Lender Fees were placed in the Defendants' custody to be used to pay Plaintiff and the other Class Members the Agent Fees they had earned.

96. Defendants are obligated to pay Plaintiff and other Class Members the mandatory Agent Fees according to the SBA Regulations.

97. Defendants willfully interfered with the rights of Plaintiff and the other Class Members, without legal justification, when they misappropriated and retained the monies paid to Defendants as part of their Lender Fees, and allocated by Treasury for the Agent Fees due upon the funding of each of Plaintiff's and the other Class Members' clients' PPP loans.

98. Defendants deprived Plaintiff and the other Class Members of the ownership, possession, and control of the Agent Fees and misappropriated them for their benefit through their unauthorized dominion over the Agent Fees.

99. At the time they unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees paid to them as part of their Lender Fees were owed to Plaintiff and the other Class M.

100. Defendants' improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by the Plaintiff and the Class Members.

101. Defendants' conduct manifests a willful or reckless disregard of Plaintiff's and the Class Members' right of possession to the monies owed to them.

102.   Defendants' improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by the Plaintiff and the Class Members.

103.   Plaintiff and the Class Members respectfully request that this Court cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated and converted by Defendants to Plaintiff and all Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members compensatory and punitive damages, and such other damages and relief that this Court deems just and proper.

## COUNT V

## VIOLATION OF RCW 19.96.020

104.   Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

105.   Plaintiff and the other Class Members have an immediate right to the mandatory and identifiable Agent Fees owed to them under the SBA Regulations.

106.   As alleged herein, the Agent Fees were paid to the Defendants as part of the Lender Fees paid to each Lender for each Borrower's loan. The SBA entrusted the Agent Fees in Defendants' custody under the guidance that such Agent Fees are to be paid to the applicable Agent, e.g., Plaintiff and Class Members.

107.   Defendants willfully interfered with the rights of Plaintiff and the other Class Members, without legal justification, when they misappropriated and retained the monies allocated by Treasury for the Agent Fees due upon the funding of each of Plaintiff's and the other Class Members' clients' PPP loans.

108.   Defendants deprived Plaintiff and the other Class Members of the possession and use of the Agent Fees and misappropriated them for their benefit.

109.   At the time they unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees were owed to Plaintiff and the other Class Members.

110.    Defendants' improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by the Plaintiff and the Class Members.

111.    Defendants' conduct manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff and the Class Members.

112.    Defendants' intentional conduct and practice are unfair and/or deceptive acts in the conduct of commerce.

113.    Defendants' intentional conduct and practice are injurious to the public interest because it injured the Plaintiff and the Class Members and continues to injure.

114.    Plaintiff and the Class Members request this Court to cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated by Defendants to Plaintiff and all Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members compensatory damages, and such other damages and relief that this Court deems just and proper.

## **Prayer For Relief**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class Members, prays for the following relief:

A. An Order certifying the Class as defined above, appointing Plaintiff as the Class Representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

B. An Order declaring Defendants' actions to be unlawful;

C. An Order declaring that Defendants have been unjustly enriched;

D. An award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Class Members, as well as equitable relief including disgorgement and enjoining Defendants from continuing the improper acts as identified herein, and all other available relief under applicable law;

E.  An award of treble damages under RCW 19.86.090 for Defendants' violation of RCW 19.86.020;

F.  Reasonable attorneys' fees and expenses as permitted by applicable statutes and law, including, but not limited to RCW 19.86.090;

G.  Costs related to bringing this action;

H.  Pre and post-judgment interest as allowed by law; and

I.  Such further relief at law or in equity that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable under Federal Rule of Civil Procedure 38(a).

Dated: June 5, 2020.

                                     **AFN Law PLLC**

                                     By: _____
                                     Angus F. Ni, WSBA # 53828
                                     AFN Law PLLC
                                     506 2nd Ave, Suite 1400
                                     Seattle, WA 98104
                                     646.453.7294

JURYDEMAND

# U.S. District Court
## United States District Court for the Western District of Washington (Seattle)
## CIVIL DOCKET FOR CASE #: 2:20-cv-00864-RSM

Fruci & Associates PS v. A10 Capital LLC et al
Assigned to: Judge Ricardo S. Martinez
Cause: 28:1331 Fed. Question: Tort Action

Date Filed: 06/06/2020
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Fruci & Associates PS**

represented by **Angus Ni**
AFN LAW PLLC
506 SECOND AVE STE 1400
SEATTLE, WA 98104
773 543 3223
Email: angus@afnlegal.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**A10 Capital LLC**

**Defendant**

**First Interstate Bancsystem**

**Defendant**

**KeyBank NA**

**Defendant**

**Mountain West Bank**

**Defendant**

**Numerica Credit Union**

**Defendant**

**Sound Community Bank**

**Defendant**

**State Bank Northwest**

**Defendant**

**U S Bank NA**

**Defendant**

**Washington Trust Bank**

NOTICE OF RELATED ACTIONS

**Defendant**

**Wells Fargo Bank NA**

**Defendant**

**Wheatland Bank Inc**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/06/2020 | 1 | COMPLAINT against All Defendants with JURY DEMAND (Receipt # AWAWDC-6385108) Attorney Angus Ni added to party Fruci & Associates, PS(pty:pla), filed by Fruci & Associates, PS.(Ni, Angus) (Entered: 06/06/2020) |
| 06/08/2020 | 2 | CIVIL COVER SHEET re 1 Complaint ; filed by Plaintiff Fruci & Associates, PS. (Ni, Angus) (Entered: 06/08/2020) |
| 06/08/2020 | 3 | PRAECIPE TO ISSUE SUMMONS by Plaintiff Fruci & Associates, PS (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons)(Ni, Angus) (Entered: 06/08/2020) |
| 06/08/2020 | | Judge Ricardo S. Martinez added. (CDA) (Entered: 06/08/2020) |
| 06/08/2020 | 4 | Summons(es) Electronically Issued as to All Defendants (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons)(CDA) (Entered: 06/08/2020) |
| 06/09/2020 | | NOTICE Pursuant to Fed.R.Civ.P 7.1, Plaintiff(s) must file a Corporate Disclosure Statement by 6/16/2020. (MET) (Entered: 06/09/2020) |
| 06/09/2020 | 5 | AMENDED COMPLAINT against All Defendants with JURY DEMAND, filed by Fruci & Associates PS.(Ni, Angus) (Entered: 06/09/2020) |
| 06/09/2020 | 6 | CORPORATE DISCLOSURE STATEMENT indicating no Corporate Parents and/or Affiliates. Filed pursuant to Fed.R.Civ.P 7.1. Filed by Fruci & Associates PS (Ni, Angus) (Entered: 06/09/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/10/2020 12:52:14 | | |
| **PACER Login:** | jimmymcd3 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-00864-RSM |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |