**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE: PAYCHECK PROTECTION
PROGRAM (PPP) AGENT FEES
LITIGATION**                                          **MDL No. 2950**

**RESPONSE OF DEFENDANT BANK OZK IN OPPOSITION TO ALLIANT CPA
GROUP LLC'S MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C.
§ 1407 FOR COORDINATED AND/OR CONSOLIDATED PROCEEDING**

**COMES NOW** Bank OZK, one of a number of defendants in a proceeding currently pending

in the United States District Court for the Northern District of Georgia styled Alliant CPA Group,

LLC v. Bank OZK, et al., No. 1:20-cv-02026-MLB (the "Georgia Action"), and respectfully submits

to the Judicial Panel on Multidistrict Litigation (the "Panel") that i) it is inappropriate under existing

case authority to consolidate the Georgia Action with twelve (12) other actions that are pending

around the United States (collectively, the "Cases") that arise out of the Paycheck Protection

Program ("PPP")[1] into a Multidistrict Litigation proceeding (an "MDL"); ii) if the Panel is inclined

to consolidate the Cases into an MDL, it is inappropriate to include Bank OZK in the resulting MDL,

such that the claims of the Class Plaintiff in the Georgia Action against Bank OZK should be severed

from any resulting MDL and remanded to the United States District Court for the Northern District

of Georgia (the "Northern District of Georgia") for adjudication; and iii) to the extent that this Panel

elects to consolidate the Cases into an MDL, and declines to sever Bank OZK from the resulting

MDL, the Northern District of Georgia is the most efficient and logical venue for such an MDL.  In

support of these arguments, Bank OZK respectfully shows this Panel as follows:

---

[1]      PPP was authorized by the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

# I.    INTRODUCTION

The Class Plaintiff in the Georgia Action has filed a Motion in the Georgia Action (the "Alliant Motion") wherein it seeks to consolidate the twelve Cases into an MDL, with the Northern District of Georgia as the preferred venue for the MDL.  The Class Plaintiff in the Georgia Action filed the Alliant Motion pursuant to 28 U.S.C. § 1407.  The Cases stem from claims that each of the Defendant Lenders in these Cases allegedly failed and refused to pay the putative "agents" for the PPP borrowers (collectively, the "Putative Agents") agent fees for services rendered that they are allegedly entitled to receive under the PPP.

Bank OZK is an Arkansas state-chartered bank that is headquartered in Little Rock, Arkansas.  Unlike many of the other named defendants in the Cases, Bank OZK is not a nationwide bank with thousands of branches across the country.  Instead, Bank OZK operates in only 10 states, most of which are located in the Southeast region of the United States.  Bank OZK is named as a defendant in only the Georgia Action, and is but one of 83 different Defendant Lenders in these Cases.

# II.    ARGUMENT AND CITATION OF AUTHORITY

## A.    It is Inappropriate to Consolidate the Cases Into an MDL

28 U.S.C. § 1407 authorizes this Panel to transfer civil actions pending in different districts involving one or more common questions of fact to any district for coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407.  The formation of an MDL is only appropriate where i) cases involve "one or more common questions of fact"; and ii) transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. 1407(a).  Before the Panel can order a transfer, "the Panel must be satisfied that all of the statutory

criteria have been met." <u>In re Highway Accident near Rockville, CT, on Dec. 30, 1972</u>, 388 F.Supp. 574, 575 (J.P.M.L. 1975).

The purpose of Section 1407 is "to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation (Fourth) § 20.131. The Panel has previously "emphasized that 'centralization under Section 1407 should be *the last solution* after considered review of all other options.'" <u>In re Six Flags Fair and Accurate Credit Transactions Act Litig.</u>, 289 F.Supp.3d 1343 (J.P.M.L. 2018) (*quoting* <u>In re Best Buy Co., Inc., Cal. Song–Beverly Credit Card Act Litig.</u>, 804 F.Supp.2d 1376, 1378 (J.P.M.L. 2011)) (emphasis added).

As a threshold matter, it is inappropriate under existing case authority for this Panel to consolidate the Cases into an MDL. The Class Plaintiff in the Georgia Action would have this Panel believe that i) the Cases all arise out of the rights of the Putative Agents to receive fees in connection with their work for borrowers under the PPP program; and, accordingly, ii) these Cases are so similar that they warrant consolidation as an MDL. At best, this is a gross oversimplification of the facts. At worst, it is a misleading and total mischaracterization of the substances of these Cases.

Of the 83 lenders that are defendants in the Cases (each a "Defendant Lender"), there appear to be almost 83 different ways that these Defendant Lenders participated in the PPP program. Each Defendant Lender had its own methods and protocols for processing PPP applications and meeting the tremendous administrative burdens of participating in the PPP program. Each PPP borrower had a unique relationship with its Defendant Lender, and each PPP borrower had a unique relationship with its Putative Agent. Further, many of the Defendant Lenders had differing policies and directives on how, and under what circumstances, they chose to deal with the Putative Agents that now constitute the class of potential Plaintiffs. Finally, the enormous administrative burden associated

3

with implementing the PPP Program may have created situations where the relationships between a given Defendant Lender and its Putative Agents were not consistent across a given lender's officers and employees.   Whether any one Putative Agent may be entitled to fees under the PPP program will come down to a micro-analysis of what was said, and done, by each PPP borrower, each Putative Agent and each Defendant Lender in connection with any given PPP Loan (collectively, the "Case-Specific Facts").[2]

These Cases do *NOT* present one or more common questions of fact.   To the contrary, these Cases present thousands of individual, unique, and detailed inquiries as to whether and to what extent a Putative Agent might be entitled to fees under the PPP Program.   As a consequence, it is wholly inappropriate to consolidate these Cases into an MDL.

There are virtually no common questions of fact between and amongst the 83 Defendant Lenders and the hundreds of thousands of PPP loans that these Defendant Lenders originated. It is therefore impossible for the consolidation of these Cases to result in the "…just and efficient conduct …" of these Cases.   In order to prevail on their claims, each Plaintiff class member is going to have to prove its own set of Case-Specific Facts that would justify, if at all, the payment of an agent fee. Consolidating a lender like Bank OZK into an MDL with large, nationwide lenders such as J.P. Morgan Chase, U.S. Bank and Wells Fargo will not make it any easier, or more efficient, for the Plaintiff class members to obtain discovery from Bank OZK regarding its policies and the Case-

---

[2]        This is an argument that Bank OZK will assert again in the future.   The claims of the various Putative Agents that seek to recover fees from Bank OZK will be dependent on each Putative Agents' relationship with the specific PPP borrower, the Putative Agent's relationship with Bank OZK and its specific officers or employees, the amount of work, if any, that the Putative Agent actually performed on behalf of any specific PPP borrower, and the extent to which the Putative Agent complied with all of the other rules and regulations that govern the SBA 7(a) loan program. The fact that each Putative Agent's claims will be resolved based on different facts and circumstances makes this litigation inappropriate for certification as a class action under Fed. R. Civ. Pro. 23.

Specific Facts surrounding whether any Putative Agent for any given Bank OZK PPP borrower meets the requirements to receive a fee for its services.

Conversely, consolidating a Defendant Lender such as Bank OZK, which only originated approximately 6100 PPP loans totaling approximately $450,000,000.00, into an MDL with nationwide lenders such as J.P. Morgan Chase, U.S. Bank and Wells Fargo[3], will destroy any hope of an efficient and swift resolution of the Putative Agents' claims against Bank OZK.  If Bank OZK is left as a defendant in an individual lawsuit with the Putative Agents, counsel for Bank OZK can work with counsel for the class Plaintiffs to conduct orderly, targeted discovery that is specifically designed to uncover the Case-Specific Facts necessary to resolve the claims of each individual Putative Agent against Bank OZK.  If, on the other hand, Bank OZK is consolidated into an MDL it will be forced to participate in a myriad of meetings, depositions, hearings and other proceedings regarding the lending practices of all of the other Defendant Lenders, which have absolutely nothing whatsoever to do with the resolution of the claims of each individual Putative Agent against Bank OZK.   Bank OZK's costs of defense will skyrocket accordingly, and make the resolution of each individual Putative Agent's claims against Bank OZK exponentially less efficient.

This Panel has emphasized on numerous occasions that it is inappropriate to consolidate actions, even if there are numerous related pending actions, if there is not a "sufficient common questions of fact to warrant Section 1407 transfer." In re Not-for-Profit Hospitals/Uninsured Patients Litigation, 341 F. Supp. 2d 1354, 1355 (J.P.M.L. 2004).[4]  In fact, common issues of fact that could

---

[3]      Bank OZK has approximately $23.39 Billion in assets.  By contrast, thirty-four (34) Lenders with more than $50 Billion in assets (including many of the Defendant Lenders) originated 1,551,170 PPP Loans totaling $187,506,735,324.00.

[4] See also In re Asbestos School Prods. Liab. Litig., 606 F. Supp. 713, 714 (J.P.M.L. 1985); In re Eli Lilley & Co. "Oraflex" Prods. Liab. Litig., 578 F. Supp. 422 (J.P.M.L. 1984); In re Luminex Int'l, Inc. Prods. Liab. Litig., 434 F. Supp. 668, 669-70 (J.P.M.L. 1977); In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig., 431 F. Supp. 906, 909-910 (J.P.M.L. 1977); In re United Gas Pipe Line Co. Litig., 391 F. Supp. 774, 776 (J.P.M.L. 1975).

lead to uniform and deliberate discovery must predominate over individual factual issues. <u>In re</u> <u>Westinghouse Elec. Corp. Employment Discrimination Litigation</u>, 438 F. Supp. 937, 939 (J.P.M.L. 1977); *see also* <u>In re Pharmacy Benefit Plan Adm'rs Pricing Litigation</u>, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002).[5]   In these Cases, any given Putative Agent's claims for the payment of fees will be wholly and utterly dependent on establishing certain Case-Specific Facts.  Accordingly, these Cases simply do not meet the high bar of common facts necessary to support, and justify, an MDL.

### B.      The Panel Should Sever Bank OZK from any Resulting MDL, and Remand the Claims Against Bank OZK to the Northern  District of Georgia for Adjudication

As noted above, Bank OZK is not a Defendant in multiple Cases.  Unlike J.P. Morgan Chase, U.S. Bank and Wells Fargo, who appear as Defendants in multiple Cases, the Class Plaintiffs have only asserted claims against Bank OZK in the Georgia Action.   As a result, and as noted above, there would be no benefit to forcing Bank OZK to participate as a defendant in any MDL that arises if this Panel grants the Alliant Motion.

Section 1407 allows the Panel, under certain circumstances, to separate a claim against one defendant from an order to form an MDL and remand that claim to its original district for adjudication.  28 U.S.C. § 1407(a).  Section 1407(a) "empowers the Panel to accomplish 'partial' transfer by (1) transferring an action in its entirety to the transferee district, and (2) simultaneously remanding to the transferor district any claims for which [MDL] transfer was not deemed appropriate."  Manual for Complex Litigation (Fourth) § 20.131.  On a number of occasions the Panel has separated and remanded discrete portions of pending lawsuits to the district in which they were originally filed.

---

[5]      *See also* <u>In re Electrolux Dryer Prods. Liab. Litig.</u>, 978 F. Supp. 2d 1376, 1377 (J.P.M.L 2013); <u>In re Ocala Funding, LLC, Commercial Litig.</u>, 867 F. Supp. 2d 1332 (J.P.M.L. 2012); <u>In re Blair Corp. Chenille Robe Prods. Liab. Litig.</u>, 831 F. Supp. 2d 1367 (J.P.M.L. 2010).

Of particular note is the litigation that was the subject of <u>In re King Resources Co. Sec. Litig.</u>, 352 F. Supp. 974 (J.P.M.L. 1972).  In the <u>King Resources</u> case, the Panel transferred a number of pending cases involving securities claims against King Resources, several of its officers and directors, and several brokers that arose out of the sale of common stock in the King Resources Company, to the District of Colorado for pre-trial proceedings.  <u>Id</u>.  One of the defendants, a relatively small brokerage firm in San Francisco, convinced the Panel that the claims against it should be severed, and remanded to the Northern District of California.    In remanding the claims against the broker, the Panel found as follows:[6]

> This brokerage firm and its representatives are not a party to any other consolidated action and its sales of King Resources securities were relatively small. For this reason the discovery sought by plaintiffs on the broker claims will not duplicate discovery conducted in the coordinated proceedings and will not be of interest to the other parties to the litigation.

---

[6]        There are a number of other instances where a Panel has severed defendants from an MDL based on the factors in the cases cited above. For instance, in <u>In re Countywide Fin. Corp. Mortgage Backed Sec. Litig.</u>, 812 F. Supp. 2d 1380, 1383-84 (JPML 2011), the Panel consolidated four cases, while excluding eight others from the MDL. The Panel went on to separate and simultaneously remand counts in one of the complaints "because these claims are distinct from claims made against the Countrywide defendants."

Similarly, in the <u>In re Seroquel Products Liability Litig.</u>, 447 F.Supp.2d 1376 (J.P.M.L. 2006) the Panel ordered the transfer of actions bringing claims against the manufacturer of the drug Seroquel, but severed those actions against other pharmaceutical companies that related to prescription medications other than Seroquel.  <u>Id</u>.  The Panel found "that centralization of [these] actions . . . would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation at this time[,]" stating the "claims do not share sufficient questions of fact with the claims against [the principal defendant] in the other actions to warrant inclusion in the MDL." <u>Id</u>. at 1379.

<u>See also</u>, <u>In re Aredia & Zometa Prod. Liab. Litig.</u>, 429 F. Supp. 2d 1371, 1372-73 (JPML 2006) (separating and remanding certain claims that were brought against different defendants and involved different pharmaceutical products); <u>In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.</u>, 469 F. Supp. 2d 1348, 1350 (JPML 2006) (transferring several cases, but excluding a California state law claim that was unique and therefore was not transferred for MDL proceedings); <u>In re Vioxx Prod. Liability Litig.</u>, 360 F. Supp. 2d 1352, 1354-55 (JPML 2005) (separating and remanding claims that dealt with a different drug and thus did not share "sufficient questions of fact" with other consolidated actions concerning Vioxx); <u>In re Alien Children Education Litig.</u>, 482 F. Supp. 326 (JPML 1979) (separating claims against individual school districts from an MDL consolidating other actions against state education agency, as the claims against the school district defendants would "involve only minimal, if any, common questions of fact"); <u>In re Antibiotic Drugs</u>, 309 F. Supp. 155, 156 (JPML 1970) (separating and remanding a single count because "the just and efficient conduct of all of the civil actions involved in this multidistrict litigation will be best served by severing" the claim and leaving it in the initial district); <u>In re Celexa and Lexapro Products Liability Litig.</u>, 416 F.Supp.2d 1361 (J.P.M.L. 2006) (separating and remanding claims that did not share sufficient questions of fact with the other claims).

Id. at 975.

The circumstances facing Bank OZK in the Georgia Action are very similar to the circumstances before the Panel in the King Resources case. Because Bank OZK is only a defendant in the Georgia Action, there will not be a circumstance where Bank OZK officials will be subject to appearing in multiple depositions in multiple Cases. Further, Bank OZK will not be faced with vexing, conflicting and burdensome discovery inquiries propounded by multiple Plaintiff Steering Committees in the various Cases. Instead, the class representative in the Georgia Action can obtain all of the discovery to which the class of Putative Agents is entitled by following the applicable rules of Federal Procedure in a separate lawsuit that could be fully prosecuted in the Northern District of Georgia. There will be no harm to the class plaintiffs in the Georgia Action if Bank OZK is severed from the MDL. Further, because Bank OZK has not been named as a defendant in the other Cases, there would be no efficiencies of scale with regard to discovery or pre-trial motions if Bank OZK were forced to participate in the MDL.[7]

On the other hand, and as noted above, Bank OZK would suffer a definite and measurable harm if it were forced to participate in the MDL. The facts that will drive the Putative Agents' claims against the larger Defendant Lenders such as J.P. Morgan Chase, U.S. Bank and Wells Fargo will be imminently more involved, and more complex, than the discrete issues and Case-Specific Facts

---

[7] To the extent that severance and remand of the claims against Bank OZK risks any duplicative discovery, which Bank OZK insists it will not, the parties can coordinate their proceedings to avoid any inconvenience. For example, the parties could file notices for a deposition in both the MDL Court and the Northern District of Georgia, so that the deposition may be used in either action. The parties may also stipulate that other discovery may be used in proceedings in both pending actions. The Panel has permitted such reasonable, easily implemented alternatives to centralization on many occasions. See, e.g., In re Circuit City Stores, Inc., Restocking Fee Sales Practices Litig., 528 F.Supp.2d 1363 (J.P.M.L. 2007) ("Alternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings.") citing In re Eli Lilly and Company (Cephalexin Monohydrate) Patent Litig., 446 F. Supp. 242, 244 (J.P.M.L. 1978) ("For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts."). See also, In re MQVP, Inc. Trademark Litig., 517 F.Supp.2d 1365 (J.P.M.L. 2007); In re Edward D. Jones & Co., L.P., Overtime Pay Litig., 442 F.Supp.2d 1370 (J.P.M.L. 2006).

that will drive the Putative Agents' claims against a regional lender such as Bank OZK, which has originated far fewer PPP loans than these other, larger lenders.  The Plaintiffs in any resulting MDL will aggressively seek the discovery of facts from the larger Defendant Lenders that will have no bearing on the Putative Agents' claims against Bank OZK, but Bank OZK will nevertheless be required to participate in, and review, the MDL discovery from and to these other Defendant Lenders.  Further, Bank OZK and its counsel will be forced to participate in multiple hearings, meetings and discovery proceedings as a party to an MDL that they would not otherwise have to attend if Bank OZK were severed and remanded into a separate proceeding.  Forcing Bank OZK to participate as a defendant in an MDL will exponentially increase Bank OZK's legal fees and the burden on its internal resources, and thus unfairly escalate the costs of resolving each Putative Agent's claims against Bank OZK in the Georgia Action.

Further, inclusion of Bank OZK in an MDL will not conserve the resources of the judiciary. The Putative Agents each have claims against Bank OZK that are distinct from the claims of the other Putative Agents against the other Defendant Lenders.  Each putative class member will have to prove a unique set of Case-Specific Facts against each Defendant Lender, and these facts are predominately unique to each Putative Agent's interaction with each Defendant Lender and PPP borrower.   The pre-trial proceedings for claims against Bank OZK will necessarily proceed independently of the pre-trial proceedings for other claims against the larger Defendant Lenders named in several of the Cases.  As a result, they will necessarily require the same attention of the MDL court, if they are not remanded, as they would in the Northern District of Georgia if they are remanded.  *See* In re Mortgage Industry Foreclosure Litig*., MDL No. 2500, 2014 WL 585934 (J.P.M.L. Feb. 12, 2014) (denying transfer of actions "predicated on the same theory of contractual interpretation" because they involved "different defendants, different plaintiffs, different mortgage

loans at different stages of the foreclosure process, different securitized trusts involving different contractual trust arrangements and different trustees and mortgage servicers, different state laws, and different putative classes"); In re: Trilegiant Membership Program Mktg. & Sales Practices Litig., 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011) ("Although all actions contain allegations of the same basic scheme . . ., the differences among the actions will reduce any efficiencies to be gained from centralization.").

Given that Bank OZK is only a defendant in the Georgia Action, and given the breadth of Bank OZK's participation as a lender in the PPP Program, it is entirely appropriate, and only fair to the interests of Bank OZK, to sever Bank OZK from any MDL that the Panel may form as a result of the Alliant Motion and remand the Plaintiffs' claims against Bank OZK to a separate proceeding the Northern District of Georgia.

### C.    If the Panel Orders Transfer, the Northern District of Georgia is the Most Logical and Efficient Forum for the MDL

If the Panel elects to consolidate the Cases as an MDL, and elects to retain Bank OZK as a defendant in the MDL, there is no question that the Cases should be transferred to the Northern District of Georgia, as requested by Alliant.  The Panel has acknowledged many different factors to consider when selecting the appropriate district for transfer and consolidation, including:  (1) where the evidence, parties, and witnesses are located;[8] (2) the geographical convenience and accessibility of the forum to the litigants;[9] (3) the preferences of the parties;[10] (4) whether cases are already

---

[8]    *See, e.g.*, In re Potash Antitrust Litig. (No. II), 588 F. Supp. 2d 1364 (J.P.M.L. 2008) (transferring the MDL to the district where two defendants were headquartered and thus where witnesses and documents were likely to be located).

[9]    *See, e.g.*, In re Intel Corp. Microprocessor Antitrust Litig., 403 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (consolidating ten California actions and four Delaware actions into an MDL in the District of Delaware because it was a geographically convenient location for the particular litigants).

[10]    *See, e.g.*, In re Vytorin/Zetia Mktg., Sales Practices & Prods. Liab. Litig., 543 F. Supp. 2d 1378, 1380 (J.P.M.L. 2008) (choosing a forum for the MDL based on the preference of several of the parties).

pending in a particular district;[11] (5) whether a particular district court judge has already invested significant time in developing familiarity with the issues likely to arise in the consolidated cases;[12] (6) whether a particular action was filed earlier than others or is more procedurally advanced;[13] (7) relative docket conditions in various districts;[14] and (8) the availability of a forum and/or district court judge with the experience and resources to handle multidistrict litigation.[15]

When considering nationwide litigation, the Panel has placed significant weight on the convenience and accessibility of the transferee district to the parties and witnesses. *See* In re Express Scripts, 368 F. Supp. 2d at 1357 (transferring cases to district that "is conveniently located for many parties and witnesses"); In re WorldCom, Inc., Secs. & "ERISA" Litig., 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) ("[L]itigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services."). On balance, these factors strongly favor the Northern District of Georgia, and weigh heavily against the District of Arizona.

The Northern District of Georgia is the most convenient and accessible district court for the litigants in these Cases. Atlanta is easily accessible by direct flights from every major metropolitan

---

[11]    *See, e.g.*, In re Publ'n Paper Antitrust Litig., 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (transferring the MDL to the district with the largest number of pending actions).

[12]    *See, e.g.*, In re Train Derailment Near Tyrone, Okla., on Apr. 21, 2005, 545 F. Supp. 2d 1373, 1374 (J.P.M.L. 2008) (transferring the MDL to a judge who had 'already developed familiarity with the issues involved as a result of presiding over motion practice and other pretrial proceedings for the past two years").

[13]    *See, e.g.*, In re: Bank of Am. Credit Protection Mktg. & Sales Practices Litig., MDL No. 2269, 2011 WL 3648279, at *1 (J.P.M.L. Aug. 16, 2011) ("The Northern District of California, where the first-filed and relatively most procedurally advanced action is pending, stands out as an appropriate transferee forum."); In re: Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig., 746 F. Supp. 2d 1359 (J.P.M.L. 2010) (transferring to the forum in which cases had progressed the furthest; In re Edward H. Okun I.R.S. § 1031 Tax Deferred Exch. Litig., 609 F. Supp. 2d 1380, 1381-82 (J.P.M.L. 2009) (transferring to the district where earlier filed and "most procedurally advanced" action was pending).

[14]    *See, e.g.*, In re Packaged Ice Antitrust Litig., 560 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008) (transferring to a district with "favorable caseload conditions").

[15]    *See, e.g.*, In re Publ'n Paper Antitrust Litig., 346 F. Supp. 2d at 1372 (choosing a transferee forum with "the resources" to handle a complex multidistrict antitrust docket); In re Janus Mutual Funds Inv. Litig., 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (same); In re Silicone Gel Breast Implants Prods. Liab. Litig., 793 F. Supp. 1098 (J.P.M.L. 1992) (expertise of a particular judge).

area and airline hub in the United States.  Atlanta's airport and hotel infrastructure are amongst the largest and most efficient in the United States.  For hearings held before the District Court in Atlanta, litigants and their counsel can take the Metropolitan Atlanta Rapid Transit Authority ("MARTA") train directly from the Atlanta Airport to within a block of the Federal Courthouse.  Finally, Atlanta's legal community is sufficiently large and sophisticated that there will be more than ample office locations for litigants to take and participate in large depositions, meetings and other proceedings.

Moreover, Atlanta's geographical position makes it the logical choice for transfer under an MDL.  Three of the twelve cases involved in this litigation have been filed in the Southeast (Georgia, Florida, and Alabama)[16], and three more cases have been filed districts East of the Mississippi River (Illinois, Ohio, and Pennsylvania)[17].  These six Cases include six proposed classes, and well more than half of the 83 total defendant lenders.  Forcing more than half of the potential litigants in these Cases to travel from the East Coast to Phoenix, Arizona for hearings and other proceedings would subject the Defendant Lenders, particularly Bank OZK, to extraordinary costs and expenses.

While no one can know which specific law firms each of the Defendant Lenders will ultimately choose to represent them in the Cases, it is worth noting that of the lawyers who have appeared in the Georgia Action, Synovus has chosen Davis, Polk & Wardwell, with lawyers from its New York office, and Wells Fargo has chosen Troutman Sanders, with lawyers from its Atlanta office.  In addition, i) in the Florida action[18] Truist Bank has retained McGuire Woods, with lawyers from its Atlanta office, and Synovus has retained Davis, Polk and Wardwell, with lawyers from its New York office: and ii) in the Ohio Action Huntington Bancshares and PNC Financial Services

---

[16]       Alliant CPA Group LLC v. Bank of America Corp., et al., Case No. 1:20-cv-02026 (N.D. Georgia); Sport and Wheat CPA PA v. Servisfirst Bank Inc., et al., Case No. 3:20-cv-05425 (Florida); Leigh King Norton and Underwood LLC v. Regions Financial Corporation, et al., Case No. 2:20-cv-00591 (Alabama)

[17]       A.D. Sims, LLC v. Wintrust Financial Corporation, et al., Case No. 1:20-vc-02644 (N.D. Illinois); David S. Lowry, CPA, LTD v. U.S. Bancorp, et al., Case No. 1:20-cv-00348 (S.D. Ohio); Hallock Shannon, PC v. Citizens and Northern Corp., et al., Case No. 2:20-cv-00714 (W.D. Pennsylvania)

[18]       Sport and Wheat CPA P.A. v. Servisfirst Bank Inc., et al., Case No. 3:20-cv-05425

Group have engaged Wachtell, Lipton, Rosen & Katz, with lawyers from its New York office, to represent them.  Bank OZK believes that many of the Defendant Lenders will ultimately choose firms with New York offices to represent them if the Panel creates an MDL.  Delta Airlines maintains an hourly shuttle from LaGuardia Airport to Atlanta's Hartsfield-Jackson Airport, and a number other airlines offer regular flights. Accordingly, Atlanta is a perfect venue for consolidation of the Cases as an MDL.

None of the Cases are more than eight weeks old, and no discovery or substantive motion practice has taken place in these cases (save and except a Motion to Dismiss that Synovus Trust Company has filed in the Florida Action, which has been denied as moot at this time).[19]   As a consequence, the dockets for the Cases are equally developed, and there is no federal judge before whom a Case is pending that has superior knowledge or experience with the PPP issues that underlie each of the Cases.   There will not be any duplication of effort, or loss of institutional knowledge, if the Panel appoints a judge from the Northern District of Georgia to manage the pre-trial issues associated with the MDL.

Given the factors cited in the controlling case authority, it is clear that the Northern District of Georgia presents a much more logical and efficient venue within which to prosecute any MDL that arises out of the Alliant Motion.

### III.    CONCLUSION

For the foregoing reasons, Bank OZK respectfully requests that the Panel deny Alliant's pending Motion to Consolidate *in toto*, or, at a minimum, sever Alliant's claims against Bank OZK and remand the claims against Bank OZK to the Northern District of Georgia for adjudication in a separate class action.  Should the Panel grant Alliant's Motion, form an MDL, and decline to sever

---

[19]    Sport and Wheat CPA P.A. v. Servisfirst Bank Inc., et al., Case No. 3:20-cv-05425 [Doc. Nos. 14 & 22]

and remand the claims against Bank OZK from the MDL, it is absolutely clear that the most logical venue for pre-trial consolidation and coordination would be the U.S. District Court for the Northern District of Georgia, as asserted by Alliant.

Respectfully submitted on June 17, 2020.

ADAMS AND REESE, LLP

*/s/William B. Gaudet*
William B. Gaudet, Esq.

701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Billy.Gaudet@arlaw.com
504-585-0263 P / 404-500-5975 F

**Counsel for Bank OZK**