## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re: PAYCHECK PROTECTION PROGRAM (PPP) AGENT FEES LITIGATION <br><br><br> This document relates to: <br> ALL ACTIONS | MDL NO. 2950 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS JAMES QUINN, FAHMIA, INC., PRINZO & ASSOCIATES, LLC, AND RATLIFF CPA FIRM, PC**

Richard D. McCune
**McCune Wright Arevalo LLP**
3281 Guasti Road Suite 100
Ontario, CA 91761
909-557-1250
Fax: 909-557-1275
Email: rdm@mccunewright.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

      A.    The Paycheck Protection Program ......................................................... 2

      B.    PPP Agent Fee Litigation ...................................................................... 4

III.  ARGUMENT ........................................................................................................... 6

      A.    Transfer of the Agent Fee Actions is Appropriate ................................ 6

            1.    The Agent Fee Actions Present Common Questions of Fact ........... 6

            2.    Transfer Will Facilitate the Convenience of the Parties and Witnesses .......... 8

            3.    Transfer Will Promote the Just and Efficient Conduct of the Agent Fee
                  Actions ............................................................................................... 10

      B.    The Hon. Jed S. Rakoff in the Southern District of New York is an Appropriate
            Transferee Judge ..................................................................................... 12

      C.    The Hon. Bruce Howe Hendricks in the District of South Carolina Would Also Be
            an Appropriate MDL Transferee Judge .................................................. 16

IV.   CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*In re Androgel Products Liab. Litig.* (MDL No. 2545), 24 F. Supp. 3d 1378, 1379 (U.S. Jud. Pan. Mult. Litig. 2014)............................................................................................................ 12

*In re Asbestos Prod. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 416 (U.S. Jud. Pan. Mult. Litig. 1991) ........................................................................................................................ 8

*In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (U.S. Jud. Pan. Mult. Lit. 2014) ............................................................................................................................ 10

*In re Checking Account Overdraft Litig.* (MDL No. 2036), 626 F. Supp. 2d 1333 (U.S. Jud. Pan. Mult. Litig. 2009)............................................................................................. 7, 8, 11

*In re Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d 1374, 1375 (U.S. Jud. Pan. Mult. Lit. 2013) ...................................................................................................................... 14

*In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (U.S. Jud. Pan. Mult. Lit. 2017)............................................................................................................ 8

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356, 1358 (U.S. Jud. Pan. Mult. Lit. 2016........................................... 10

*In re Juul Labs, Inc., Mktg., Sales Practices & Prod. Liab. Litig.*, 396 F. Supp. 3d 1366, 1367-68 (U.S. Jud. Pan. Mult. Lit. 2019)................................................................................ 8

*In re Nat'l Prescription Opiate Litig.* (MDL No. 2804), 290 F. Supp. 3d 1375 (U.S. Jud. Pan. Mult. Lit. 2017)............................................................................................................ 11

*In re Nine W. LBO Sec. Litig.*, No. MDL 2941, 2020 WL 2847269, at *2 (U.S. Jud. Pan. Mult. Lit. June 2, 2020) ............................................................................................................ 14

*In re Rhodia S.A., Sec. Litig.*, 398 F. Supp. 2d 1359, 1360 (U.S. Jud. Pan. Mult. Lit. 2005)....... 15

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1380-82 (U.S. Jud. Pan. Mult. Lit. 2019) ....................................................... 8

*In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation,* 6:15-mn-02613-BHH (ECF No. 233 at pp. 2-3) .................................................................................................................... 17

**Statutes**

28 U.S.C. §1407(a) .................................................................................................. 6, 12

Pub. L. No. 116-136, 134 Stat. 281 ........................................................................... 2

**Treatises**

Manual for Complex Litigation, Fourth, §20.131.................................................. 12, 13

In accordance with Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, Plaintiffs James Quinn, Fahmia, Inc., Prinzo & Associates, LLC, and Ratliff CPA Firm, PC (together, the "Quinn Plaintiffs"), file this Interested Party Response to the Motion for Transfer filed by Alliant CPA Group LLC (Dkt. No. 1).

## I.   INTRODUCTION

The actions before the Panel relate to numerous Small Business Administration-certified lenders' failure to pay "agent fees" in connection with processing Paycheck Protection Program (PPP) loans approved for small businesses under the CARES Act. These lenders processed federal government loans for small businesses. The SBA agreed to compensate the lenders with additional "lender fees" ranging from 1 to 5 percent of the borrower loan amount. From these lender fees, lenders were to compensate agents (*e.g.*, accountants or CPAs), such as the Quinn Plaintiffs, who assisted borrowers. These "agent fees" were set at approximately 15-25 percent of the lender fees, again depending upon the borrower loan amount. The actions before the Panel relate to unpaid PPP agent fees. Through early June 2020, more than 4.5 million PPP loans, totaling more than $500 billion, have been approved by more than 5,000 different lenders dispersed throughout the country.

The Quinn Plaintiffs support the motion to transfer the agent fee actions for coordinated or consolidated pretrial proceedings, but suggest different transferee judges (and districts), either of whom they believe would be more appropriate for this MDL. The Quinn Plaintiffs suggest transfer either to the Honorable Jed S. Rakoff in the U.S. District Court for the Southern District of New York, who already is presiding over four agent fee actions that have been designated "related," or

to the Honorable Bruce Howe Hendricks in the U.S. District Court for the District of South Carolina, who is now presiding over six such actions.[1]

## II.  BACKGROUND

### A.       The Paycheck Protection Program

As is well-known, in early 2020 the federal government raced to ease the damage to the U.S. economy resulting from the shut-down of virtually every business across non-essential industries due to the COVID-19 pandemic. In order swiftly to distribute money to small businesses, Congress authorized the nation's SBA-certified lenders to expedite the processing of applications and the distribution of loan funds through a temporary addendum to the SBA's 7(a) Loan Program. As set out in the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which became law on March 27, 2020, the $659 billion PPP loan program thus provided access to federally-guaranteed cash flow assistance for small businesses, to be administered by the SBA. Pub. L. No. 116-136, 134 Stat. 281.

The Treasury Department published a PPP Lender Information Sheet describing the lending process.[2] That PPP Information Sheet, in conjunction with the PPP Interim Final Rule and guidance entitled Paycheck Protection Program Loans FAQs, described that borrowers would be responsible for certifying the accuracy (subject to significant penalty) of certain application representations, including with respect to historic payroll data, but that lenders would be permitted

---

[1]       A chart of the Quinn Plaintiff actions—which also identifies the cases pending before Judges Rakoff and Hendricks—is attached as **Exhibit A**. Exhibit A combines the information set out in the Quinn Plaintiffs' Notices of Related Actions filed at JPML 2950 Dkt. Nos. 98, 135, and 143.

[2]       *See* U.S. Department of Treasury, "Paycheck Protection Program (PPP) Information Sheet, Lenders," available at https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf (last accessed June 16, 2020) (hereafter, "PPP Information Sheet").

to rely on those certifications and representations.[3] The PPP acknowledged that small businesses might require the assistance of CPAs, accountants, or other "agents" to assemble this information or to support their applications. The PPP Information Sheet defines an agent as "an authorized representative" and includes "An attorney; An accountant; A consultant; Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant; Someone who assists a lender with originating disbursing, servicing, liquidating, or litigating SBA loans; A loan broker; or Any other individual or entity representing an applicant by conducting business with the SBA." PPP Information Sheet, *supra* n. 2.

The law dictated that neither the SBA-certified lender nor any such "agent" would be permitted to collect fees from the loan applicant, but it provided instead that lenders and agents would receive government remuneration for their services. In particular, lenders would receive—from the government—"lenders fees" in the amounts of: 5% for loans of not more than $350,000; 3% for loans of more than $350,000 and less than $2,000,000; and 1% for loans of at least $2,000,000. *Id.* "Agent fees" were to be in amounts not exceeding: 1% for loans of not more than $350,000; 0.50% for loans of more than $350,000 and less than $2 million; and 0.25% for loans of at least $2 million. *Id.* Critically, the program dictated that agent fees were to be "paid out of lender fees. **The lender will pay the agent.**" *Id.* (emphasis supplied). As of this filing, more than

---

[3]     The PPP Interim Final Rule is published at 13 C.F.R. Part 120, available at https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf,     and the FAQs are available at https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions_05%2027%2020-508.pdf (both documents last accessed June 16, 2020).

4.5 million PPP loans, totaling more than $500 billion, have been approved by more than 5,000 different lenders.[4]

### B.     PPP Agent Fee Litigation

Lender practices under the PPP have spawned different types of litigation. A number of small business PPP **borrowers** (or, those who attempted to borrow) have initiated lawsuits against lenders alleging improprieties in the application and lending process. Some of these actions are the subject of different Section 1407 motions to transfer before the Panel, seeking centralization of separate MDL proceedings. *See, e.g.*, *In re JPMorgan Chase Paycheck Protection Plan Litig.* (MDL No. 2944); *In re Bank of America Paycheck Protection Plan Litig.* (MDL No. 2952); and *In re Wells Fargo Paycheck Protection Plan Litig.* (MDL No. 2954) (collectively hereafter, "PPP Borrower Actions"). The PPP Borrower Action plaintiffs appear to assert claims based on a variety of different types of alleged conduct, including, *e.g.*, prioritizing larger loan applicants over smaller applicants, excluding applicants who were not existing customers of the lender, and backdating approvals. These varied allegations led one defendant to oppose transfer entirely of certain PPP Borrower Actions, which it described as, "a jigsaw puzzle of unmatched pieces" that "allege different factual circumstances, purported injuries, and putative claims arising out of different alleged policies, procedures, and practices." JPMorgan Chase Bank, N.A.'s Cons. Response in Opp. to Mtns. For Transfer of Actions, MDL No. 2944, Dkt. No. 69 at pp. 1, 11.

In any event, those PPP Borrower Actions are a different species of litigation than the ***agent fee*** actions that are the subject of this MDL No. 2950. As noted above, the agent fee actions seek

---

[4]     *See* U.S. Small Business Association *Paycheck Protection Program (PPP) Report, Approvals through 6/12/2020*, available at https://www.sba.gov/sites/default/files/2020-06/PPP_Report_Public_200606%20FINAL_-508.pdf (last accessed June 17, 2020).

payment of the fees to which agents legally are entitled relating to ***funded*** PPP loans. An important distinction emanating from this is that while a particular PPP borrower presumably has a claim (if at all) against only a single lender, PPP ***agents*** often performed work for numerous small business clients, each of which might have secured its PPP lending through a different SBA-certified PPP lender. A given agent fee plaintiff, then, might have separate agent fee claims to assert against numerous lenders—if they all failed to pay the agent fees. The Quinn Plaintiffs, who are CPAs or other "agents" as described in the Treasury's PPP Information Sheet, illustrate this point: collectively, they assert claims against thirteen different financial institution families in thirteen different civil actions pending across five districts. *See* **Ex. A**. In each, they allege claims on behalf of plaintiff classes for declaratory relief, breach of contract, conversion, unjust enrichment, and state consumer protection or unfair business practices laws against a single PPP lender defendant (and, at times, its affiliates).

In all, as of this filing, there presently are 31 agent fee actions before the Panel (hereafter, "Related Actions"), filed by 27 different plaintiffs in 18 different districts, and involving 116 financial institution defendants.[5] The Related Actions assert similar claims on behalf of similar (or even overlapping) putative classes of plaintiffs for the same or similar conduct undertaken by lender banks functioning under a single federal law and regulatory scheme. The collection of Related Actions is certain to grow, and actions against additional PPP lender defendants are certain to be filed. As discussed below, the Related Actions (and any future tag-along agent fee cases) are well-suited for transfer and pretrial coordination or consolidation.

---

[5]   A chart of all actions before the Panel as of June 16, 2020, is attached as **Exhibit B**. Some defendants are affiliates of each other.

### III. ARGUMENT

"The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation, Fourth, §20.131. The Related Actions assert virtually indistinguishable claims on behalf of (often) overlapping classes of plaintiffs, against a growing number of PPP lender defendants who all are accused of violating the same law and regulatory requirements at roughly the same time. The Related Actions all are at their infancy. Even so, the already substantial number of cases (and the significant number of PPP lender defendants) strongly suggest the importance of early coordination by a skilled transferee judge. This need will become only more apparent as new cases are filed and additional lender defendants are added. Centralization before an appropriate transferee such as Judge Rakoff in the Southern District of New York or Judge Hendricks in the District of South Carolina could, at this early stage, put the Related Actions on an expeditious path to resolution.

### A.      Transfer of the Agent Fee Actions is Appropriate

Pursuant to 28 U.S.C. §1407(a), the Panel may transfer to any district for coordinated or consolidated pretrial proceedings "civil actions involving one or more common questions of fact [that] are pending in different districts," when in its determination such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."

### 1.  The Agent Fee Actions Present Common Questions of Fact

All of the actions before the Panel involve the same core fact pattern: the defendants are SBA-certified lenders who undertook to process and approve PPP loans for small businesses. They did this pursuant to a single law and a single SBA regulatory structure. Those regulations dictated

the lenders' compensation and provided for the agent fees to be paid out of that compensation. The plaintiffs performed as agents for their small business clients who obtained the PPP loans from the defendants, and the plaintiffs demand payment of the agent fees to which they are entitled under the law. The Related Actions also present common facts to be discovered: what did each defendant certify to the SBA about its participation in and compliance with the PPP program; what was each defendant's policy as to the payment of PPP agent fees; how was that policy reached; and what steps did the defendants take to ascertain the identity of PPP borrower agents. Separate lawsuits raising common questions about the similar practices of different banks are appropriate for centralization.

These common factual inquiries strongly favor transfer of the Related Actions for coordinated proceedings. The Panel's centralization in *In re Checking Account Overdraft Litig.* (MDL No. 2036), 626 F. Supp. 2d 1333 (U.S. Jud. Pan. Mult. Litig. 2009) is instructive. There, it centralized a number of actions pending in different districts against different defendant banks, each of which was accused of engaging in unlawful overdraft practices with its own (different) retail customers. The Panel centralized the actions despite banks' argument (likely to be repeated here) that different banks had unique practices. It noted that "[w]hile there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank … policies and procedures to warrant centralization of all actions in one MDL docket." 626 F. Supp. 2d at 1335. Just as the Related Actions here allege that each PPP lender defendant failed to pay agent fees as required by a common federal law regulatory structure, the actions in MDL 2036 shared factual questions about the imposition of common overdraft fees "by various bank defendants on their customer's checking accounts," which justified transfer in order

7

to "eliminate duplicative discovery; avoid inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary." *Id.*

The fact that a growing number of defendants are involved in these actions is not a barrier to centralization where these common facts create efficiencies. *See*, *e.g.*, *In re Asbestos Prod. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 416 (U.S. Jud. Pan. Mult. Lit. 1991) (centralizing cases involving nearly 500 defendants); *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (U.S. Jud. Pan. Mult. Lit. 2017) (centralizing litigation involving more than 50 defendants selling dozens of different products); *In re Juul Labs, Inc., Mktg., Sales Practices & Prod. Liab. Litig.*, 396 F. Supp. 3d 1366, 1367-68 (U.S. Jud. Pan. Mult. Lit. 2019) (centralizing actions involving more than 80 defendants); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1380-82 (U.S. Jud. Pan. Mult. Lit. 2019) (centralizing claims against more than 90 defendants manufacturing different products in different states).

The Related Actions likewise present a straightforward set of common facts most efficiently investigated and established through, at a minimum, coordinated discovery. Even if each lender defendant established an agent fee policy on its own, transfer and coordination or consolidation of the actions still would permit a single court to oversee an efficient discovery process designed to develop evidence about each such policy in order to assess compliance with the law. *See In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d at 1335 (rejecting argument that unique factual questions predominate in actions brought against different banks and noting that transfer will allow a single district court to "formulate a pretrial program" to address any "non-common issues" and streamline all actions).

### 2.   Transfer Will Facilitate the Convenience of the Parties and Witnesses

Transfer and coordination or consolidation will also serve the convenience of the parties and the witnesses. A large number of lender defendants in the Related Actions have been sued not just in multiple actions, but also in multiple jurisdictions. For instance, the Quinn Plaintiffs sued the JPMorgan defendants in the Southern District of New York, but the JPMorgan entities are also named in ***nine*** other actions filed in ***eight*** additional districts.[6] Bank of America defendants have been sued in seven different districts. *See* **Ex. B** at Rows 14, 17, 22, 23, 24, 26, 27.  Eleven other lender defendants already have been sued in multiple districts.[7] Each of these defendants presumably has an interest in litigating this case once, with respect to the pleadings, fact and expert discovery, class certification, law and motion matters, and trial. Transfer and coordination or consolidation thus reduces the likelihood of duplicative efforts but also of inconsistent rulings from different courts. And while it is true that all lender defendants are not headquartered in the same (or in any single) location, this does not detract from the efficiency of transfer generally. In-person court hearings have, in many cases, ceased entirely during the COVID-19 outbreak; it remains to be seen whether courts will conclude that telephonic or video court conferences can continue to be just as effective going forward. Further, with respect to discovery, witnesses presumably will continue to provide their evidence where they are located, irrespective of transfer. The efficiency

---

[6]    *American Video Duplicating, Inc. et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 2:20-cv-03815 (C.D. Cal.); *Brunner Accounting Group et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 2:20-cv-04235 (C.D. Cal.); *ImpAcct, LLC v. JPMorgan Chase Bank, N.A. et al.*, No. 1:20-cv-01344 (D. Colo.); *Panda Accounting, LLC et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 2:20-cv-00985 (D. Ariz.); *Panda Group, P.C. et al. v. Chase Bank USA et al.*, No. 4:20-cv-00045 (D. Utah); *William Bookmyer et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 2:20-cv-02284 (S.D. Ohio); *Full Compliance, LLC et al. v. JPMorgan Chase Bank N.A. et al.*, No. 1:20-cv-22339 (S.D. Fla.); *Howard Smukler et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 3:20-cv-03413 (N.D. Cal.); and *Juan Antonio Sanchez, PC et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 7:20-cv-00139 (S.D. Tex.).

[7]    *See* **Ex. B** (identifying Citibank, N.A.; First-Citizens Bank & Trust; Keybank, N.A.; Live Oak Banking Co.; Regions Bank; Synovus Bank; TD Bank, N.A.; Truist Bank; U.S. Bank, N.A.; Wells Fargo Bank, N.A.; and Zions Bancorporation, N.A.).

to be gained is in those witnesses providing their evidence only *once*, which can only result from effective coordination. Trial or evidentiary hearings might require additional travel, but given the alternative—a slate of multiple cases pending in multiple different districts—whatever limited additional travel those tasks might implicate likely is *less* intrusive and *less* inconvenient for the parties and the witnesses than proceeding without transfer and coordination.

Nor is informal coordination among parties, counsel, and the courts a realistic alternative under the circumstances. The Quinn Plaintiffs are mindful of the Panel's admonition that they address what efforts have been made to pursue alternatives to centralization, and undersigned counsel has had preliminary discussions with counsel for a number of the other plaintiffs before the Panel. Realistically, though, it is unlikely that the parties (or the district courts) could achieve informal coordination given the sheer number of actions pending. *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356, 1358 (U.S. Jud. Pan. Mult. Lit. 2016) (coordination among 54 pending actions in more than twenty districts "does not appear practicable"); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (U.S. Jud. Pan. Mult. Lit. 2014) (voluntary coordination of cases in five districts against 80 defendants "impractical").

### 3. Transfer Will Promote the Just and Efficient Conduct of the Agent Fee Actions

All of the Related Actions are at the outset. Although there are actions against numerous PPP lender defendants, this creates a unique opportunity for a single transferee court to develop, from the ground up, a coordinated and efficient approach to litigating these claims on behalf of overlapping classes of plaintiffs. As described in Point III.B., *infra*, Judge Rakoff has for instance commenced a plan of aggressively coordinating the actions already before him. Early, active coordination is in the interest of the parties and of the federal court system generally. The plaintiffs

advance largely the same claims, on behalf of similar classes, against similar sets of defendants. Even if there are some individual fact issues pertaining to certain plaintiffs or certain defendants, all the actions can be expected also to implicate common fact questions pertaining to the PPP agent fees, which supports centralization. *See In re Nat'l Prescription Opiate Litig.* (MDL No. 2804), 290 F. Supp. 3d 1375 (U.S. Jud. Pan. Mult. Lit. 2017) (transferring actions against various differently situated defendants where plaintiffs allege that all defendants failed to adhere to "obligation under the Controlled Substances Act and similar state laws to prevent diversion of opiates … into illicit channels."). Importantly, even if different banks in the Related Actions enacted *some* different policies, there clearly also are common facts and transfer has "the salutary effect of placing all related actions before one court which can formulate a pretrial program" to account for common and non-common issues and to ensure "proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the benefit of the parties." *In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d at 1335

Although the Panel has, on occasion, expressed some reluctance to centralize litigation on an industry-wide basis, the actions before it here justify doing so. First, the putative classes of plaintiffs involved in the actions overlap. As illustrated just by the cases already on file, many agent fee plaintiffs can assert—and have asserted—claims against multiple PPP lenders. The Quinn Plaintiffs chose to assert the claims they had against separate PPP lenders in separate civil actions. Other plaintiffs have taken a different tack: the plaintiffs in *American Video Duplicating et al. v. Citibank et al.*, No. 2:20-cv-03815 (C.D. Cal.), for instance, asserted claims against Citibank, US Bank, JPMorgan, Wells Fargo, Bank of America, and others all in the same civil action. *See* **Ex. B** at Row 17. The same is true of numerous other plaintiffs. *See id.* at, *e.g.*, Rows 15, 19, 22 (Panda Accounting, LLC, Brunner Accounting Group, and ImpAcct, LLC all asserting

claims against JPMorgan along with other PPP lenders in same civil actions). This landscape begs for coordination. The Quinn Plaintiffs understand that JPMorgan intends to support MDL formation as to the claims against it, but to oppose centralization generally. The Panel has rejected similar "alternative" approaches when litigants have suggested centralization of only certain cases. In *In re Androgel Products Liab. Litig.* (MDL No. 2545), 24 F. Supp. 3d 1378, 1379 (U.S. Jud. Pan. Mult. Litig. 2014), the Panel centralized actions against multiple manufacturers of testosterone replacement therapies on an "industry-wide" basis. It reasoned that the actions would share factual questions regarding general causation, background science, and common regulatory issues, and that proposed alternative approaches involving only certain cases could prove "too procedurally complicated" and "likely would delay the resolution of the common core issues" in the litigation. *Id.* Further, Section 1407(a) authorizes the Panel to transfer "civil actions," not claims. *See* Manual for Complex Litigation, Fourth, §20.131. Where a number of the "civil actions" before the Panel include claims against JPMorgan *alongside claims against other PPP lenders*, JPMorgan's more limited centralization would create insurmountable logistical hurdles.[8]

**B.      The Hon. Jed S. Rakoff in the Southern District of New York is an Appropriate Transferee Judge**

As set forth above, through early centralization and skillful coordination, the actions before the Panel can be litigated in an efficient, fair, and expeditious manner. The Honorable Jed S. Rakoff, Senior District Judge in the U.S. District Court for the Southern District of New York, is an experienced transferee judge who would be an ideal jurist to oversee this litigation.

---

[8]      At the same time, in view of the defendants' limited role under the PPP program, there is little risk that transfer and coordination of actions against multiple defendants would implicate confidentiality concerns among them that could not easily be addressed by the transferee court.

While no single factor dictates the appropriate transferee selection, the Panel does consider *inter alia* where the largest number of cases is pending, where cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges. Manual for Complex Litigation, Fourth §20.131. Four of the Quinn Plaintiffs' actions are currently pending before Judge Rakoff. The first-filed of these, *Quinn et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 1:20-cv-04100-JSR (S.D.N.Y.) (hereafter "*Quinn v. JPMorgan*"), was randomly assigned to Judge Rakoff. Over the objections of defendants Citibank and Union Bank,[9] he thereafter related and accepted for reassignment actions against Signature Bank, Union Bank, and Citibank.[10] The parties to these four actions already have filed an initial joint Rule 26(f) plan for discovery and Judge Rakoff has advised the parties that the related cases should be trial-ready by November 23, 2020, subject to confirming discovery cut-off dates and ruling on defendants' objections to this schedule. An initial court conference in the S.D.N.Y. related cases is set for June 23, 2020, at which time it is expected that an expedited schedule for Rule 26 disclosures, discovery, and Rule 12 motions will be set.

In addition to relating these four agent fee actions before Judge Rakoff, the Southern District of New York also rejected JPMorgan's separate request to relate *Quinn v. JPMorgan* to an earlier-filed PPP **borrower** action, entitled *Ryan M. Kull et al. v. Chase Bank USA, N.A. et al.*, No. 1:20-cv-03138-NRB (S.D.N.Y.).[11] This is important insofar as it demonstrates that Judge

---

[9]     *See Quinn et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 1:20-cv-04100-JSR (S.D.N.Y.) at Dkt Nos. 16 (Citibank Opp. to Fahmia's Related Case Statement) and 17 (Union Bank Opp. to Fahmia's Related Case Statement).

[10]     *See* June 8, 2020 docket entries on S.D.N.Y. Docket Sheet for *Quinn v. Signature* (reproduced at MDL 2950 Dkt. No. 98-4), June 9, 2020 docket entries on S.D.N.Y. Docket Sheet for *Fahmia v. MUFG* (MDL 2950 Dkt. No. 98-5), June 9, 2020 docket entries on S.D.N.Y. Docket Sheet for *Fahmia v. Citibank* (MDL 2950 Dkt. No. 98-6).

[11]     *See Ryan M. Kull et al. v. Chase Bank USA, N.A. et al.*, No. 1:20-cv-03138-NRB (S.D.N.Y.) at Dkt. No. 9 (JPMorgan June 4, 2020 Notice of Related Action identifying *Quinn v.*

Rakoff and the Southern District of New York appreciated immediately the fundamental distinction between PPP *agent fee* cases, as to which the Quinn Plaintiffs here support transfer, and PPP *borrower* cases, which appear to be the subject of several different Section 1407 transfer motions. *See* Point II.B, *supra*. The Quinn Plaintiffs take no position on the motion to transfer the PPP Borrower Actions in MDL Nos. 2944, 2952, and 2954, but would not support centralization of the MDL 2950 PPP agent fee cases and the PPP Borrower Actions in a single MDL.

A district judge since 1996, Judge Rakoff is of course well-known to the Panel, having successfully presided over no fewer than five previous or ongoing MDLs. These include several banking and finance-related litigations, such as *In re Refco Inc. Securities Litigation* (MDL No. 1902); *In re Merrill Lynch & Co., Inc., Securities, Derivative & "ERISA" Litigation* (MDL No. 1933); and *In re Nine West LBO Securities Litigation* (MDL No. 2941). As the Panel recently concluded in transferring the latter MDL to his docket, "Judge Jed S. Rakoff is an experienced transferee judge, and we are confident he will steer this litigation on a prudent and expeditious course to resolution." *In re Nine W. LBO Sec. Litig.*, No. MDL 2941, 2020 WL 2847269, at *2 (U.S. Jud. Pan. Mult. Lit. June 2, 2020).

Centralization in the Southern District of New York is also geographically appropriate. The Related Actions are pending in districts around the country. Plaintiffs and defendants alike are geographically dispersed. Many PPP lender defendants are major national banks or federally-regulated credit unions. Others are state-chartered lending institutions. As the country's preeminent financial center, the Southern District of New York is as appropriate a transferee forum

---

*JPMorgan*), Dkt. No. 10 (Quinn Plaintiffs' Response), and Dkt. No. 11 (JPMorgan Reply). These filings were in the form of letters addressed to the Hon. Naomi Reice Buchwald (presiding over the *Kull* action), with copies provided to Judge Rakoff. Judge Rakoff's chambers ultimately clarified that the *Quinn v. JPMorgan* agent fee action was not related to the *Kull* borrower action and that *Quinn v. JPMorgan* and the three cases related to it would remain with Judge Rakoff.

as any for an MDL relating to bank lending practices. *See In re Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d 1374, 1375 (U.S. Jud. Pan. Mult. Lit. 2013) (centralizing banking-related actions in Southern District of New York). Numerous PPP lender defendants call New York home, and the nation's third most-populous state abounds with CPAs, auditors, and other professionals fitting the PPP definition of "agent" and thus likely to be class members. In fact, according to the SBA's most recent PPP data, New York is fourth highest nationally in the total number of approved loans per state, and third highest nationally in net dollars loaned.[12] In short, in addition to the four cases already pending there, New York is as likely as any location to be convenient for the largest number of parties. *See In re Rhodia S.A., Sec. Litig.*, 398 F. Supp. 2d 1359, 1360 (U.S. Jud. Pan. Mult. Lit. 2005) (centralizing actions in Southern District of New York as an "accessible, metropolitan location" where no district stood out as focal point of litigation and parties and witnesses were geographically dispersed).

While S.D.N.Y. has an undeniably busy docket, with 28 judgeships and 43 district court judges (including senior status),[13] it more than handles its civil caseload. The number of pending cases per judgeship is 668, which approximates the national average of 675.[14] The average time from filing to civil trial is 31.0 months, which is only slightly slower than the national average of 27.8 months, but still well inside the speedier half of districts nationally.[15] The Southern District

---

[12]     *See* U.S. Small Business Association *Paycheck Protection Program (PPP) Report, Approvals through 6/12/2020*, at p. 5 (New York: 297,775 approved loans totaling $37,548,994,774), available at https://www.sba.gov/sites/default/files/2020-06/PPP_Report_20200612-508.pdf (last accessed June 17, 2020).

[13]     *See* United States District Court, District Judges, available at https://nysd.uscourts.gov/judges/district-judges?last_name=&page=0 (last accessed June 16, 2020).

[14]     *See* Federal Court Management Statistics–Profiles, U.S. Courts (Mar. 31, 2019), available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf (hereafter, "FCMS Profiles") (last accessed June 16, 2020).

[15]     *Id.*

of New York is well-conditioned to handle MDL proceedings, with 18 such actions currently pending.[16]

The movants proposed centralization before the Hon. Leigh Martin May in the Northern District of Georgia. Dkt. No. 1. The Quinn Plaintiffs have no doubt that Judge May and many of her colleagues would perform exceptionally as transferee, but the Northern District of Georgia is a busier district, presiding over only a single Related Action, and, critically, Judge May has now recused from that action. *See Alliant CPA Group v. Bank of America et al.*, No. 1:20-cv-02026 (N.D. Ga.) Dkt. No. 21.[17]

Finally, as is well-known to the Panel, to the extent travel is required for court hearings, the Southern District's Manhattan courthouse is conveniently accessed from three major international airports with numerous flight options to virtually any other major U.S. airport. With an experienced transferee judge presiding over four related cases against different PPP lender defendants in the nation's major banking hub, the Southern District of New York and Judge Rakoff are appropriate to oversee this matter.

### C.   The Hon. Bruce Howe Hendricks in the District of South Carolina Would Also Be an Appropriate MDL Transferee Judge

The Hon. Bruce Howe Hendricks in the District of South Carolina is another highly capable district judge with MDL experience particularly germane to this action. Judge Hendricks was

---

[16]   MDL Statistics Report - Distribution of Pending MDL Dockets by District (June 15, 2020), available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-15-2020.pdf (last accessed June 16, 2020).

[17]   With only 11 judgeships, the Northern District of Georgia has the 14th most pending cases per judgeship (773) of any district in the country. See FCMS Profiles. The Alliant CPA Group matter was reassigned to the Hon. Michael L. Brown, who took the bench in January 2018 and has a heavy docket. *See* CJRA Table 8—Report of Motions Pending Over Six Months For Period Ending September 30, 2019, (April 1, 2020), available at https://www.uscourts.gov/sites/default/files/data_tables/cjra_7_0930.2019.pdf (last accessed June 17, 2020).

appointed in the District of South Carolina in 2014, after she served as a magistrate judge in the same court for the preceding twelve years. In 2015, the Panel transferred *In re TD Bank, N.A., Debit Card Overdraft Fee Litigation* (MDL No. 2613) to Judge Hendricks. Like the agent fee cases here, the *In re TD Bank* MDL began as more than a dozen purported class actions seeking redress from a major national bank. She deftly handled the transferee role, efficiently addressing leadership issues, the use of consolidated complaints, making timely dispositive rulings, and handling issues pertaining to production of sensitive bank customer data. Ultimately, Judge Hendricks succeeded in pushing the parties to an expeditious resolution. Judge Hendricks granted final approval to the settled class action earlier this year, on January 9, 2020, after supervising a "grueling" discovery schedule, and after entertaining class certification oral argument just two years after the Panel transferred the action to her. *See* Jan. 9, 2020 Final Order and Judgment, *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation,* 6:15-mn-02613-BHH (ECF No. 233 at pp. 2-3).

Judge Hendricks currently presides over six of the Related Actions in this MDL—more than any other judge. *See* **Exs. A, B**. The District of South Carolina has ten judgeships and currently lists fourteen district judges (including senior status) on its website.[18] It falls in the middle of district courts nationally, with 521 pending cases per judgeship (which is significantly lower than the national average of 675), and its average time from filing to civil trial of 26.0 months puts it in the speediest quarter of districts in the nation for that metric.[19] JPML statistics identify three

---

[18]     *See* United States District Court, Dist. Of South Carolina, District Judges, available at https://www.scd.uscourts.gov/Judges/distjudge.asp (last accessed June 16, 2020).
[19]     *See* Federal Court Management Statistics–Profiles, U.S. Courts (Mar. 31, 2019), available at     https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf (last accessed June 16, 2020).

current MDLs assigned to the District of South Carolina, including Judge Hendricks's recently resolved *In re TD Bank* matter.[20]

Judge Hendricks sits in the District's Charleston courthouse. To the extent travel remains a regular part of court appearances, Charleston is, of course, a major Atlantic coast port city with abundant lodging and amenities. Charleston International Airport services flights on eight different U.S. carriers.[21] As an experienced banking MDL transferee, Judge Hendricks would make an outstanding judge for this action. Centralization before her in the District of South Carolina would promote the just and efficient conduct of this litigation overall as well.

## IV. CONCLUSION

For the foregoing reasons, the Quinn Plaintiffs support transfer of the agent fee actions for coordinated or consolidated pre-trial proceedings before either the Hon. Jed S. Rakoff (S.D.N.Y.) or the Hon. Bruce Howe Hendricks (D.S.C.).

DATED:  June 17, 2020

*s/ Richard D. McCune*
Richard D. McCune
**McCune Wright Arevalo LLP**
3281 Guasti Road Suite 100
Ontario, CA 91761
909-557-1250
Fax: 909-557-1275
Email: rdm@mccunewright.com

*Counsel for the Plaintiffs James Quinn, Fahmia, Inc., Prinzo & Associates, LLC, and Ratliff CPA Firm, PC*

---

[20]   MDL Statistics Report - Distribution of Pending MDL Dockets by District (June 15, 2020), available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-15-2020.pdf (last accessed June 16, 2020).

[21]   *See* https://www.iflychs.com/Flights/Destinations (last accessed June 16, 2020).